# CASES IN CHANCERY.

---

## THE NORTH AMERICAN COAL COMPANY *vs.* DYETT and others.

The acceptor of a bill of exchange, which is accepted for value received, and not merely for the accommodation of the drawer, is the principal debtor to the holder, and the drawer is only liable in the character of a guarantor or surety; and giving further time of payment to the drawer without the consent of the acceptor in such a case, does not discharge the liability of the latter.

A feme covert is as to her separate estate considered as a feme sole, and she may, either in person or by her legally authorized agent, bind such separate estate with the payment of debts contracted for the benefit of the estate, or contracted for her own benefit upon the credit of the separate estate. And the assent or concurrence of her trustee is not necessary for that purpose, where no restriction upon her power over the trust fund is contained in the deed or instrument under which such separate estate is held.

The separate estate of a feme covert is in equity chargeable with her debts contracted upon the credit of that estate, to the same extent that the estate of a feme sole is chargeable with the debts of such feme sole by the common law.

Where an estate is vested in a trustee, in trust for a feme covert for life, with remainder to her children, she cannot, without the assent of the trustee contract any debt which will be a lien or charge upon the remainder to the children, even for expenditures which are beneficial to the whole estate.

THIS case came before the chancellor upon an appeal from a decree of the vice chancellor of the first circuit, dismissing the complainants' bill, with costs. In September, 1821, Joshua Dyett and Jesse Ann his wife, in pursuance of an ante-nuptial agreement, conveyed a house and lot in New-York belonging to the wife to W. Hammersley and M. Dyett, as trustees, upon the following trusts: *First*, to sell and convey the premises, with the written con-

1837.
August 28.

sent of the husband and wife, and to invest the proceeds of the sale in other real estate or upon securities; and with power to change the investments from time to time, with the like written consent, so as to produce the best annual income, without lessening the principal of the estate. *Secondly,* to permit the husband to receive the rents and profits or income of the trust estate during coverture, for the use of himself and wife; and if he survived her, to receive the same to his own use during life, to enable him to educate and maintain the children of the marriage, if there should be any; and if there were no children, then to his own use forever. *Thirdly,* in case of the husband's death, leaving his wife surviving, then to permit her to receive the rents, profits and income for her own use for life, and to enable her to maintain the children of the marriage; and if no children, then to her own use forever; but if there should be children or the issue of such children of the marriage living at the death of the wife, then to their use forever. A further provision was contained in the deed of settlement, that the husband should not alien or dispose of the rents or income, but should apply the same to the common use of himself and wife; and that the same should not be made liable for the payment of his debts; and in case of his making any sale or other disposition of such rents or income, *or of his becoming insolvent,* that the rents, issues, interest and profits of the estate should be paid over by the trustees to the wife, *to her sole and separate use,* in like manner as if she were a feme sole. In March, 1822, M. Dyett retired from the trust, and in pursuance of a provision contained in the deed of settlement, W. Chapman was appointed trustee in his place. In May, 1823, Hammersley and Chapman, the trustees, with the written consent of Dyett and wife, purchased a manufacturing establishment in Dutchess county, on account and for the benefit of the trust estate, and gave a mortgage on the house and lot in New-York to raise a part of the purchase money; and the factory was also encumbered with mortgages. In the purchase of the factory, it was agreed that Chapman should be interested to the amount of one half, upon the performance of certain condi-

tions; one of which conditions was, that he should keep the trust estate indemnified against loss on account of the purchase of the factory, or the giving of the mortgage, &c. In September, 1825, Chapman made some arrangement with Dyett to sell out his equitable interest in the manufacturing establishment. And from that time Dyett had the whole management thereof as agent for the trust estate, until he was enjoined from interfering, by an injunction, at the suit of Chapman, in September, 1826; previous to which Dyett and wife had discharged Chapman from the trust, in pursuance of a power for that purpose contained in the deed of settlement. After Dyett was enjoined, C. M. Livingston was regularly appointed the agent of the factory by Dyett and wife and the remaining trustee; and he continued to act as such until the sale of the factory in 1830; but Dyett continued in the meantime to reside near the factory, and assumed a sort of management or control over the affairs thereof, with the knowledge of the agent and without objection. In 1827, Dyett being insolvent, was discharged under the act, and made a general assignment of all his property; by reason of which the wife, according to the terms of the deed of settlement, became entitled to the whole rents and profits of the trust estate, for life, to her sole and separate use. And from that time, the rents and profits of the factory, as well as of the other parts of the trust estate, were received by her, or by her husband with her assent. In July, 1828, the factory being in want of coal, Dyett wrote to his correspondent in Philadelphia to purchase a cargo of coal for the use of the same, who agreed with the agent of the complainants for the coal, to be paid for in cash or in a draft at 60 days. The coal was accordingly forwarded to the factory, consigned to the care of Dyett; and the same was received and used for the purpose of the establishment. Dyett gave to the complainants a draft, for the amount of the coal, upon Livingston, the agent; which draft upon its face stated the consideration thereof to be for value received at the factory; and the same was duly accepted by Livingston, as the agent of the factory, but was never paid. The bill in this cause was

1837.

North Ameri-
can Coal Co.
v.
Dyett.

filed for the purpose of subjecting the trust estate to the payment of this debt, and the debts of all other persons, having similar claims thereon, who might think proper to come in under the decree. [*See* 2 *Edw. Ch. Rep.* 115, *S. C.*]

*J. Blunt,* for the appellant.

*M. Hoffman,* for the respondent.

THE CHANCELLOR. The vice chancellor arrived at correct conclusions as to most of the questions in this case ; but I think he erred in supposing that the Dutchess Cotton Factory was a separate and distinct trust estate, and was alone chargeable with the supplies purchased for the use of that part of the trust property. The house and lot in New-York and the factory were but different parts of one entire estate ; the rents and profits of the whole of which belonged to the wife, as her separate estate, after the insolvency of her husband in 1827. If this debt, therefore, was properly chargeable upon the income of the factory, it is chargeable on the entire income of the whole estate. The trust deed having authorized the trustees, with the written consent of the cestuis que trust, to change the investments from time to time, as they should think proper, every new investment of any part of the trust property was a mere change, and not a severance of the trust estate ; the newly acquired property and what remained of the original investment still constituting but one trust estate, the net income of the whole of which, after paying all proper charges and claims thereon, belonged to the wife, for her separate use.

I agree with the vice chancellor that there is no doubt in this case that the coal was purchased for, and applied to the use of the factory as a part of the trust estate. And although Dyett, as the drawer of the bill, which was afterwards protested for non-payment, may be legally liable as such drawer, he is merely in the situation of a surety for the trust estate ; the acceptance being for value received

1837.

North Ameri-
can Coal Co.
v.
Dyett.

by the trust estate, and not by Dyett personally. Living-
ston as the agent being legally authorized to contract for
supplies for the factory, his acceptance was the acceptance
of the trust estate, and Dyett was merely the medium of
purchase. Even if Dyett had purchased upon his own ac-
count solely, yet as the coal was received by the trust es-
tate, the acceptance of his draft in favor of the orignal ven-
dor, for value received by the acceptor, was sufficient to
make the trust estate primarily liable for the payment of
the draft. And if Dyett had been obliged to pay it in his
character of drawer, he would be entitled to repayment
out of the income of the estate. It is perfectly well settled
that the acceptor of a bill of exchange, which is accepted
for value, and not merely for the accommodation of the
drawer, is the principal debtor to the holder ; and that the
drawer is only liable in the character of a mere guarantor or
surety. The taking of the subsequent note from Dyett and
giving further time to him, could not therefore discharge
the trust estate as the principal debtor. And it was express-
ly agreed that the giving of the note should not discharge
the liability upon the acceptance, if the note was not paid.
The rights of the parties in this case are, therefore, precise-
ly the same as if Livingston had himself purchased the coal,
and had given his note for the same in his character of
agent for the factory.

For the purpose of ascertaining how far the trust estate
is liable for the payment of this debt, it is necessary to see
what was the nature of the several interests therein at the
time the debt was contracted, and who was to be benefitted
by the purchase of the coal for the use of the factory. Dy-
ett had at that time become insolvent; and all his interest
in the trust estate which remained was his chance of survi-
vorship and of dying without issue after the death of his
wife. For, by the express terms of the trust deed, the wife
was entitled to the whole income of the trust estate for life,
for her separate use, in the event which had occurred.
And this coal was purchased for the purpose of carrying on
the factory, and thereby increasing the rent or income of
the trust estate which then belonged solely to the wife.

The contingent interests of the husband and of the children in the income, or in the principal of the estate after the death of the wife, were not intended to be benefitted by the purchase. I can, therefore, discover no principle, either legal or equitable, which should charge those interests with the payment of this acceptance. The feme covert is as to her separate estate considered as a feme sole, and may, in person or by her legally authorized agent, bind such separate estate with the payment of debts contracted for the benefit of that estate, or for her own benefit upon the credit of the separate estate. And even the assent or concurrence of the trustee is not necessary, where no restriction upon her power is contained in the deed or instrument under which such separate estate is held. (*Dowling* v. *Maguire,* 1 *Lloyd & Goold's Rep. Temp. Plunkett,* 19. *Cater* v. *Eveleigh,* 4 *Desau. Rep.* 19. *Montgomery* v. *Eveleigh,* 1 *McCord's Ch. Rep.* 267.)

But certainly she cannot exercise a greater control over the trust estate, or charge it to a greater extent than if she was in fact a feme sole. Where different estates, therefore, are limited in the same trust property, as in this case, the cestui que trust of one estate cannot charge the whole trust property with debts contracted for his benefit or for the benefit of his particular estate or interest therein. Thus, in the present case, the husband was entitled to the rents and profits of the estate until he became insolvent, in 1827. And debts which were contracted for the purpose of carrying on the factory, and thus increasing the income for the use of himself and wife during that period, were a proper charge upon the rents and profits and income of the whole trust estate during the same time, notwithstanding the prohibition in the deed of settlement against making the trust estate liable for his debts. But as his interest in the trust estate terminated when he was discharged under the insolvent act in 1827, at least during the life of his wife, and her separate estate for life then became vested, the debts which had been previously contracted for the benefit of the income only of the estate, and not for the preservation or benefit of the

capital of the property, were not properly chargeable upon her separate estate for life in the property. Nor can the debts contracted during the continuance of her separate estate and for her particular benefit, be charged upon the remainder which is limited to others after her death. And neither Dyett or his wife, or their agent could, without the authority of the trustees, contract any debt or create any lien upon the remainder, which was limited to the children of the marriage, even for expenditures which were for the benefit of the whole estate. These principles are very fully illustrated by Chancellor Harper in the recent case of *Maywood & Patterson* v. *Johnson*, (1 *Hill's Ch. Rep.* 228,) and the decree which he made in that case in conformity to these principles was affirmed by the court of appeals in South Carolina.

Some conflicting decisions have taken place in England as to the power of a feme covert to render her separate estate liable for debts contracted by her, on the credit of such estate, but which were not for the benefit thereof. And Mr. Prater thinks this difficulty has arisen by confounding the rights and privileges of the wife, at common law, with her equitable rights and liabilities in regard to her separate estate, which estate has been secured to her by this court upon principles derived from the civil law. And he holds, that upon those principles, her separate estate in equity should be chargeable with her debts to the same extent that the estate of a feme sole would be chargeable by the principles of the common law. In other words, that her equitable estate should be liable for the payment of all her equitable debts, to the same extent as though such debts were contracted by a feme sole. (*Prater's Law of Husb. & Wife*, 109.) Such, indeed, was the opinion of the court of dernier resort in this state, in the case of *Jaques* v. *The Methodist Church*, (17 *John. Rep.* 548;) and such appears to be the spirit of some of the earliest as well as of one of the most recent decisions in England on this subject. (*See Hulme* v. *Tenant*, 1 *Bro. C. C.* 19. *Pybus* v. *Smith*, 3 *Idem*, 340. *Murry* v. *Barlee*, 4 *Sim. Rep.* 82.)

1837.

North American Coal Co.
v.
Dyett.

In the present case, the wife as well as the trustee had the right to contract this debt, for the benefit of her interest in the income of the trust property, and to charge that interest with the payment thereof, by this acceptance of her agent. And if she has used the whole income of this part of the trust property for the support of herself or her family, instead of paying the debts out of the same, or if she or her trustee or agent has permitted the husband or any one else to misapply the income which should have been appropriated to the payment of this and other debts of the same character, the future rents and profits of her separate estate in the trust property must be applied to satisfy such debts. But the interest on the mortgage, which was a prior specific lien upon the trust estate at the time of filing the complainants' bill, must be kept down by such rents and profits.

The decree of the vice chancellor dismissing the complainants' bill must be reversed, with costs. And there must be a reference to ascertain the amount due to the complainants, and to the other creditors whose debts have been contracted for the benefit of the wife's separate interest in the trust estate since the insolvency of the husband, in 1827. This is the only class of the creditors who have a common interest with the complainant in charging her separate estate in the trust property, and are therefore the only ones who can come in under the present bill. And Dyett's contingent interest in the trust estate, after the death of his wife, even if it has not gone to his assignees under the insolvent act, cannot be reached in this suit in consequence of his personal responsibility as the drawer of the draft given for the coal, because the complainants had not exhausted their remedy at law against him personally at the time of filing the bill, and their debt was not contracted on the credit or for the benefit of his contingent interest in the trust property. If there are any creditors whose debts are chargeable upon the trust property generally, capital as well as income, they must make their claim by a distinct bill. To such a bill the children of Mrs. Dyett, if there are any in existence, should be made parties; to the

end, that a proper apportionment of those debts may be made upon the future as well as upon the present estates or interests in the trust property.

Upon the coming in and confirmation of the master's report, the complainant's costs in the original suit and upon this appeal, and the costs of the trustee, must be paid out of the income of the trust fund which has accrued and is now in the hands of the trustees, or which may hereafter accrue during the life of Mr. Dyett; after deducting the interest on the mortgages and the necessary expenses for repairs, insurance, &c. And the amount due to the complainants, and to the other creditors, if any, having like claims who shall come in and establish the same before the master in the usual form, are then, in like manner, to be paid rateably out of the income of the estate. The master is to take an account of the income of the trust fund in the hands of the trustees, and report the same at the same time with the the other matters of reference. And the trustees are thereafter to account annually for the income of the trust estate, after keeping down the accruing interest and paying other just charges as aforesaid, and pay over the balances which shall from time to time be reported due; until the costs, together with the debts reported due to the complainants and such other creditors, and the interest thereon, are fully paid, or until the death of Mrs. Dyett. In the meantime the defendants Dyett and wife are to be restrained by injunction from changing or removing the present trustees, except by the sanction of this court on due notice to the complainants and such other creditors; or from assenting to any change of the investment without the like sanction, or from intermeddling, in any way, with the trust estate, or the use, or income, or profits thereof.(a)

(a) This decision was afterwards affirmed on appeal to the court for the correction of errors.