HON. ASA O. ALDIS,
HON. JOHN PIERPOINT, } ASSISTANT JUDGES.
HON. JAMES BARRETT,

---

## FRARY ET AL. *v.* BOOTH ET AL.

### *Husband and Wife. Mortgage. Chancery.*

A married woman contracting a debt for her own benefit, may make it an express charge on her separate estate, and her mortgage for that purpose will be supported in equity.

A husband may by his acts, as well as by express agreement, divest himself of his marital rights in his wife's property so as to make it her separate estate.

A wife left her husband in 1847. In 1852, property was devised to her, which she occupied and controlled without any interference of her husband until the present time. In 1857 she made a mortgage upon her estate to secure payment of a debt for necessaries for the support of herself and children, and in 1858 she obtained a divorce and made a second mortgage on the same property. *Held,* that though as between her and her husband the devise to her lacked the affirmative words necessary to constitute a separate estate in the strict meaning of the terms, yet under the circumstances it was to be considered her separate estate as between her and the first mortgagee.

Frary et al. *v.* Booth et al.

Such first mortgage may also be supported in equity on the principle that where a married woman trades as a *feme sole*, or obtains credit on her separate estate, a court of equity will hold the proceeds of the business or the estate subject to the claims of her creditors.

Or on the principle that the estate of a married woman living apart from her husband is liable for her maintenance.

The second mortgage having been made with notice of the circumstances, has no equity to come in before the first.

The statutes of Vermont, in regard to the conveyance of married women's estates, do not affect the jurisdiction of the courts of equity over the subject of separate estates.

BILL to foreclose the equity of redemption in certain mortgaged premises situated in Strafford, Vermont. The material facts as they appeared in the bill and answers and the testimony taken, are sufficiently set forth in the opinion of the court.

The court of chancery, January Term, 1864,—PECK, Ch.,—dismissed the bill *pro forma*,—from which decree the orators appealed.

*Wm. Hebard*, for the orators, maintained that a married woman may either sue or be sued. 1st, when her husband has voluntarily abjured the realm, or has been banished. Coke's Littleton, 133 ; *Countess of Portland* v. *Prudges*, 2 Ves. 104 ; *Dubois* v. *Hale*, *ib.* 613 ; *Robinson* v. *Reynolds & Wife*, 1 Aik. 174 ; 2d Kent's Com. 154 ; *Corbet* v. *Poelnity*, 1 Term, 6 ; Fonb. Eq. 101 and notes. 2d, when the parties agree to live separate, and the husband has made provision for her support. This was so at least until the case of *Marshal* v. *Rutton*, 8 Term, 546. 3d, when the husband is a foreigner and is out of the state or kingdom. *Walford* v. *Duchess de Prime*, 2 Esp. 554 ; *Franks* v. *Same*, *ib.* 586 ; *De Gaillon* v. *Victorie Hurd de Aigle*, 1 B. & P. 357 ; *Gregory* v. *Paul*, 15 Mass. 31 ; *Abbot* v. *Bayley*, 6 Pick. 89 ; *Love* v. *Maynham*, 16 Ill. 277.

The cases cited were all suits at law, seeking to obtain a judgment either for or against the person of a married woman, whereas this case seeks upon equitable principles to lay hold of the property of the defendant which she had voluntarily and *solemnly pledged* for the payment of necessaries delivered to her upon the faith of this property, and thus in fact becomes a proceeding *in rem* and not *in personam*.

A *feme covert* may create a charge or lien upon her property for the payment of debts contracted for the benefit of that property, or for her own benefit. *No. Am. Coal Co.* v. *Dyett*, 7 Paige, 9.

The objection that she had not the exclusive control of her estate at the time she mortgaged it has no force in this case. 1st, she had the entire and perfect legal title. 2d, her husband had abandoned her, and left her to take care of herself, which was an abandonment of any claim to control her estate. 3d, he never did assume any control of it, and before this bill was brought, she became a *feme sole.*

But we claim and insist, that the distinction which has been made by some of the cases between husbands who are aliens and those who are not, has no foundation in principle, and has not been regarded in this country. 2 Kent's Com. 157 ; *Bean* v. *Morgan*, 4 McCord, 148.

The terms of the will vested the property absolutely in Mrs. Booth, and it was exclusively within her control. But if it were otherwise at the time, it would not affect the *equitable consideration* of this question, as the husband never did assume any control of the estate. And at the time of bringing this bill, he had ceased to have any right to control it.

The mortgage to the defendant Moore does not take precedence of this. 1st, for the reason that the estate is of sufficient value to pay both mortgages. 2d, because in that mortgage the defendant Moore has mingled debts of the estate with his own. 3d, because he has suffered Mrs. Booth to use up the property of the estate, which he ought to have applied in settling up his administration account.

*Peck & Colby*, for the defendants.

1. The deed to the orators is absolutely void, the husband not having joined in the conveyance. G. S. p. 448, § 2.

All our legislation is opposed to the position assumed by the orators that the deed of the wife, under circumstances like the present, will pass her title, or create any valid lien. By a statute law of Pennsylvania, passed in 1848, the property of the wife is exempt from the husband's debts, and is to be owned, used and enjoyed by her as her separate estate, and cannot be encumbered by her husband without her consent. It is settled in that state, that this statute does not authorize her to convey her real estate, and that a conveyance by

her alone is a nullity, whether she lives with or apart from her husband. *Peck* v. *Ward*, 6 Harris, 506 ; *Thorndell* v. *Morrison*, 1 Casey, 326. In *Rhea et al.* v. *Rhenner*, 1 Peters, 105, the supreme court of the United States held the same doctrine in a case identical in its circumstances with the present.

2. The orators, however, seek to enforce the deed as an appointment by the wife of her " separate property " for the payment of debts contracted by her.

1st. It does not clearly appear that Mrs. Booth agreed or intended to charge this estate with the payment of these debts at the time they were contracted. 2d. The orators had no right to trust her, relying on this property, as the estate of the devisor was in process of settlement and might have been absorbed in the payment of his debts. But, 3d, what is decisive of this point is the fact that the property in question was not devised to Mrs. Booth's " separate use."

Married women are treated as *femes sole* only as to such property as is limited by express words to *their sole and exclusive use*. In the absence of such express words, it is not her *separate estate* which she can effect by an appointment or otherwise control without her husband. 2 Story's Eq. Jurisp. § 1397, Redfield's Ed. ; *Butler* v. *Buckingham*, 5 Day, 492 ; *Albany Fire Ins Co.* v. *Bay*, 4 Cow. 9 ; *Martin* v. *Dowelly*, 6 Wend. 7 ; *Curtis* v. *Engel*, 2 Sandf. 287–9 ; *Knowles* v. *McConely*, 10 Paige, 343–6 ; Lead. Cas. in Equity, 360 note ; Law Reporter Nov. 1863, p. 49.

The divorce granted subsequently cannot operate by relation to make the deed effective. 8 Cowen, 277.

3. The defendant Moore as executor paid the debts of the devisor to the amount of about $600. He as well as the creditors had a lien on the property for these debts. This lien cannot be affected by the orators' claim. Moore's lien is first, and is represented by his mortgage.

4. The orators' mortgage being *void*, if they can be regarded as having the right to charge this property with their debt, it can only be done after the defendants' lien created by their mortgage, is discharged.

Frary et al. *v.* Booth et al.

BARRETT, J. In this case the following are the facts material to the leading questions presented in the argument. Mrs. Booth was the adopted daughter of Mr. Norton, and, up to the time of her marriage, lived in his family in Strafford. Soon after her marriage she went with her husband to Canada, where he had relatives, and lived with him a short time, and then, (sometime prior to 1847,) returned to her home in Strafford with two children, issue of the marriage. Her husband has ever since remained in Canada. Till the death of Mr. Norton, in 1853, she continued to live in his family, taking a leading part in household affairs, and receiving support for herself and children, except that she furnished their clothing. In 1852, Mr. Norton made his will, giving to Mrs. Booth his home farm, stock, horses, farming tools, &c. After his decease the will was duly probated and established, and Mrs. Booth has continued to reside in the family homestead, holding, occupying, and managing the property given her by the will, supporting herself and children without any aid from her husband, and without any claim or interference by him in respect to the control, management or disposition of said property, and without any claim or offer by him to live with his wife and children; he, during all the time, being destitute of property and credit, and wholly irresponsible. After the decease of Mr. Norton, Mrs. Booth purchased goods of Frary & Co., and of other stores in which Mr. Harris was interested as partner, necessary for the support of herself and children, on credit given solely to herself, in reliance on her right and interest in the property given her by said will. In settlement of the accounts for said goods she executed the notes described in the bill in this case, and on the 12th of October, 1857, she executed to Frary a mortgage of said farm to secure the payment of said notes. At the General Term of the supreme court in November, 1858, she obtained a divorce from her husband, after which, and on the 24th day of said November, she executed a mortgage of the same property to J. S. Moore, as set forth in his answer. Mr. Moore was executor of said will of Mr. Norton, which will made the debts of the testator, and the expense of settling his estate, a charge upon a piece of land in Granville, in case what should be due to the estate should prove insufficient for that purpose.

Frary et al. *v.* Booth et al.

Mrs. Booth makes defence on the ground that she was *feme covert* when the orator's mortgage was executed, and that she gave it upon compulsion by threats of suit and the attachment of her property. Mr. Moore defends on the same ground, and insists that his mortgage is entitled to priority. He also defends on the ground that, as executor, he has paid the debts of the testator and the expense of administration under the will, out of his own money; and, in any event, claims that he is entitled to a lien upon said mortgaged property for such payment, in priority to the orator's mortgage.

Upon the facts thus stated, with other incidental facts which will appear in the course of the discussion, it is to be determined whether the orators are entitled to enforce against the property the security which said mortgage purports to give.

Before presenting the views of the court upon the main grounds upon which the case was discussed in the argument, we remark, that we do not concur with the learned counsel for the defence, in assuming as a conclusive proposition, that the mortgage executed by Mrs. Booth to the orators is wholly void. At common law, and irrespective of the statute of this state, it would be void and ineffective; and it would be equally so in equity, unless the purpose, occasion, and circumstances of giving it, bring it within the operation of principles upon which courts of equity give such instruments a legitimate vitality and effect. Sec. 2, p. 448 of G. S.:—" A husband and wife may, by their joint deed, convey the real estate of the wife in like manner as she might do by her separate deed if she were unmarried," and the provisions of ch. 71 of G. S., by which the wife may, in case of desertion or ill-treatment by the husband, make disposition of her property without his joining in the deed, do not affect the subject as it is involved in and presented by this case. The first of said enactments does not declare the sole deed of the wife void, nor does it imply that it is, except as resulting from the effect of coverture at common law. It has regard only to the effect of that relation at common law, and was designed to provide a mode by which she might transfer the title to her real estate at law, notwithstanding the common law effect of coverture. It is an *enabling* and not a disabling or restrictive act, and can by no means be regarded as trenching upon the scope of equitable jurisdiction and interposition in reference to

the rights, liabilities, and duties of married women in respect to their property and contracts.

In *Buchanan* v. *Chamberlin et al.*, in Orange county, 1858, (not reported,) a mortgage, given by the wife to secure the payment of money borrowed to pay towards the purchase of the mortgaged property, was held valid against the husband and the children, the wife having deceased.

The latter of said statutory provisions was designed to give, not an *exclusive*, but an additional and somewhat summary means as against the husband, for insuring to the wife the use and benefit of her own property for her support, in case she should be abandoned by, or compelled by ill-treatment to live apart from him.   They cannot, upon any ground of reason, be construed as taking away or curtailing the scope of interposition by courts of equity in cases falling within the ordinary cognizance of such courts.

Passing, without further remark, the point made in defence upon the statutes referred to, we come to the more important ground of debâte.

In courts of equity, for many purposes, the separate and unmerged existence of the wife, both in respect to her person, her property, and her contracts, is recognized, asserted, and made the ground of action to the same extent as if she had not been married ; and the course of adjudication has now pretty clearly defined the principles, and indicated the category of cases upon and in which this may properly be done.   Within the scope of those principles and cases, there are many cases in which, for the purpose of protecting the wife, and of doing justice to other parties, the wife has been treated as *feme sole sub modo*, and to a limited extent, in respect to contracts made by her, and in respect to rights and interests in property held by or accruing through her.

Though cases at law were largely cited in the argument by orators' counsel, but little aid can be derived from them in dealing with this subject in the forum of equity.   Some analogies of principle, and some deductions of reason from them, may give more or less countenance to the doctrine held and administered by courts of equity, but the cases themselves can hardly be regarded as establishing either principles or rules that control or direct the action of those courts

It is to be determined, therefore, whether the principles and cases which appertain to this subject in those courts, require the relief to be granted that is invoked by this bill.

In England it is established law in equity, that a *feme covert* has the same power of charging or appropriating her *separate* estate, as if she were *feme sole*, unless there be a restriction in the instrument by which she is invested with such estate. The main and important difference in respect to the extent of such power in her, as held in England, and by the courts of different states in this country, consists in this,—in some of the states it is held that she can charge or appropriate her separate estate only in such manner and to such extent as she is expressly authorized to do by the instrument of conveyance or settlement; while in others it is held that she can charge or appropriate it for her own benefit, or for the benefit of her estate, as fully as if sole, provided there be no restriction in this respect in the instrument of conveyance or settlement. The English rule has been adopted in Connecticut. In *Imlay* v. *Huntington*, 20 Conn. 146, STORRS, J., in the course of an elaborate opinion, says :—" We adopt the English rule, not only as supported by the highest authority, but because we think it is also supported by the strongest reason." The same is reasserted in 32 Conn.

In New York, in the case of *The Methodist Episcopal Church* v. *Jaques*, 17 Johns. 548, upon the fullest consideration by the court of error, the English rule was approved and maintained, though it may be regarded as subsequently limited to the charge or appropriation by the wife for the benefit of herself or her estate. In *N. A. Coal Co.* v. *Dyett*, 7 Paige, 9, it is held that " the *feme covert*, as to her separate estate, is considered as a *feme sole*, and may in person, or by her legally authorized agent, bind such separate estate with the payment of debts contracted for the benefit of that estate, or for her own benefit, upon the credit of the separate estate." And the same doctrine is held in *Gardner* v. *Gardner*, 7 Paige, 112. In this last case, when in the court of errors, 22 Wend., COWEN, J., held the following language :—" If the wife holds an estate separate from and independent of her husband, as she may do in equity, chancery considers her, in respect to her power over this estate, as a *feme sole;* and although she is still incapable of charging herself at law, and equally incapable

in equity of charging herself personally with debts, yet I think the better opinion is, that separate debts, contracted by her expressly on her own account, shall, in all cases, be considered an appointment or appropriation for the benefit of the creditors, as to so much of her separate estate as is sufficient to pay the debts, if she be not disabled to charge it by the terms of the donation."

The same rule as in *N. A. Coal Co.* v. *Dyett, supra,* is recognized by the Vice-Chancellor, 2 Sanf. Ch. Rep. 287, in *Curtis* v. *Engel,* and is explicitly sanctioned in *Yale* v. *Dederer,* 18 N. Y. 265. It is true, in this case, when again before the court of appeals, 22 N. Y. 450, SELDEN, J., attempts to weaken the stability of the law as thus held and adhered to in New York. While we cannot accord success to the attempt, yet it is pertinent to the case in hand to remark, that the court hold in that case an *express* charge, created by a married woman upon her separate estate for her own benefit, to be valid in equity.

In the recent case of *Todd and others* v. *Mrs. Lee and husband,* 15 Wis. 365, DIXON, C. J., upon an extended examination and discussion of the subject says :—" Within all the authorities, the separate estate of a married woman will be charged in equity with the payment of debts contracted for her benefit."

The lack of general equity powers in the courts has, perhaps, precluded the adjudication of the subject in the New England States, except Connecticut and Vermont; and in Vermont it has not before been called into judgment. We are prepared, however, to adopt the principle of the law as established in England, Connecticut and New York, to the extent, at least, that a married woman may charge her separate property for her own benefit, (and that is all that the present case requires,) regarding it as resting in sound legal and moral reasons, and resulting in securing to the wife all proper protection, while effectuating justice between her and those with whom she has dealt with reference to and upon the credit of her separate property.

This brings us the question,—was the property embraced in the mortgage of Mrs. Booth to the orators, her *separate* property, within the true intent and spirit of the law, as held and administered upon this subject, in a legitimate application of it to the facts of this case?

The will of Mr. Norton gave it to her alone, without condition or limitation, its language being, "I give and devise to Adeline Booth, of Strafford, all my home-farm, so called, consisting of about sixty-three acres, and also I give and bequeath to her all my stock and horses," &c., &c. It is clear, upon well-established principles applicable to title created by will, that she was vested with an absolute estate in fee in the farm, subject only to the marital rights of the husband. *Separate estate* in a married woman involves, as the characterizing fact, that she holds it to her sole use, in exclusion of the marital rights of the husband. If the will had expressed it to be to her sole use, in exclusion of the right of the husband to control or dispose of it, it would have been her *separate estate* in the fullest legal sense and effect of the expression, though it was land given to her directly, without the interposition of trustees. In the earlier English cases, adopting the doctrine of the subject from the civil law, the *separate property* consisted in personalty invested, with provision that the wife should have the proceeds to the extent and in the manner specified, or the income and proceeds of lands held by trustees. This, indeed, has been true of most of the cases throughout the whole course of adjudications upon this subject in the English equity courts. Hence, upon a cursory view, the impression is easily derived, that *separate estate* is predicable only of personalty invested, or of the income of real estate vested in trustees. Even PRATT, J., in a dissenting opinion in *Albany Fire Ins. Co.* v. *Bay*, 4 Coms. 27, says:— "*Separate estates* in married women, which courts of equity recognize their right to dispose of as *femes sole*, are strictly equitable estates. They are always created by deed, devise, or marriage settlement, vesting the legal estate in some third person." But in the American note to the case of *Hulme* v. *Tenant*, 1 Lead. Cas. in Eq. p. 417, it is said, "the intervention of a trustee is not necessary to the validity of a trust to the separate use of a married woman. If real or personal property be given to her separate use, her interest will be protected by converting the husband into a trustee;" and a large number of American cases is cited, which establish this as the law in this country. The case of *Fanny Porter* v. *Bank of Rutland and others*, 19 Vt. 410, adopts and stands upon this view of the law. Indeed, the necessity of an actual or even an ideal trust,

in order to constitute a separate estate of the wife, which she may bind for the payment of her debts, has been abandoned in England, as appears by the case of *Owens* v. *Dickinson,* 1 Craig. & Phil. 48, and by the still later case of *Johnson* v. *Gallager,* 7 Lond. Jur. N. S. 273 ; and it is now held that such estate may exist without the fact or fiction of a trustee, and be directly reached by execution out of the court of chancery.

As before remarked, the will gave to Mrs. Booth an absolute title to the real estate ; and we receive the impression from the peculiar language of the deed, in giving it to her without naming heirs, in connection with the fact that she was, and for a long time had been, living apart from her husband, with the burden of supporting herself and her children cast upon her, without any care or aid from him ; that it was the intention of the testator to give her the property named, both real and personal, as her separate property. But it would, probably, be going too far to say that the will itself, as an instrument conferring title, can be held to have that effect. It lacks the ordinary affirmative expressions which have been held requisite to exclude the husband from his marital rights in property thus coming to the wife.

As already said, *separate estate* in a married woman involves, as the characterizing fact, that she holds it to her sole use in exclusion of the marital rights of the husband. The cases uniformly show that the law of the subject had its origin, and has been developed, established, and applied, with reference to claims made by the husband, or by those standing in his right, in virtue of his marital rights, as against the exclusive right of the wife to the property in question. In such cases the rule has become established that the instrument of conveyance or settlement must contain explicit words of exclusion in order to shut out the husband and his assigns from his marital rights.

But in the present case, neither the husband, nor any one under him, is claiming any right in the property. The will was made during his separation from his wife ; the testator died, and the will took effect to pass the title to Mrs. Booth while the separation was continuing. She was left by the testator at his death in the possession of the property as her home and resource for support,

and she continued ever after in that possession, controlling and managing the property, without any interposition or claim by her husband; being (as before said) left by him to support herself and children, without any contribution or offer of aid by him in that behalf. This, we think, may properly be regarded as a practical and continuing negation, on his part, of any right or interest in the property, in virtue of his marital rights,—a practical and continuing construction and effect given to the will, as giving to the wife the absolute title in exclusion of himself as husband, —an effectual appropriation of the property to her sole and separate use.

If the husband, by an ante-nuptial agreement, had stipulated that the property coming to the wife during coverture, should be her sole and separate property, and subject to her exclusive disposal, such agreement would be effectual in equity to disembarrass the wife from any marital restraints in the disposition of such property. See *Barron* v. *Barron et al.*, 24 Vt. 375, in which the cases involving the subject are extensively examined and the law ably discussed by Isham, J.

So, too, a post-nuptial agreement of a similar character, made upon sufficient consideration (as, for instance, that the wife should support herself, or herself and children, without calling on the husband therefor, if performed by the wife,) would in equity be held equally effectual. True, there was no such agreement, in terms, in this case. Still, we think the facts before stated put the husband in the same relation to this property as if there had been. We think no principle nor rule of the law is infringed in the present case, in which the question does not arise upon a claim by the husband or in his right, by holding that property which the wife holds by absolute title and disembarrassed of any claim resting upon the marital rights of her husband, is to be regarded as her separate property, within the principles and in subserviency to the purposes of the law governing the subject; and that in such case it makes no difference in what way it is invested with such character of separate property. If it is thus held by her, then, in equity, she has power to charge it for her own benefit the same as if she were discovert.

We therefore hold that Mrs. Booth, for the credit which she had
7

obtained, was warranted in making the debts a charge upon the land thus owned by her, and that the mortgage to the orators, which we find to have been given voluntarily and without compulsion, constitutes an express charge upon, and appropriation of, the property for the payment of the debts specified therein.

There is another line of judicial administration in equity, the principle of which seems ample to warrant this court in effectuating the pledge of the property for the payment of the debts in question ; and that is, cases where the wife, with the consent of the husband, has carried on business in her own name as sole trader or otherwise.   It is established beyond controversy, that the property and proceeds of the business may be held by the wife's creditors, for the payment of the debts contracted in that business, against any claim or right of the husband, and, in most cases, against his creditors.   This was recently held by this court in a case in Windsor county, *Partridge & Co.* v. *Stocker et al.,* 36 Vt. 108.   See Story Eq. § 1385–6–7, in which last section it is said :—" If a husband should desert his wife, and she should be enabled by the aid of friends to carry on a separate trade (as that of milliner), her earnings in such trade will be enforced in equity against the claims of her husband."   This all goes upon the ground that the creditors of the wife have an equitable right to the property and proceeds of the business, in reliance upon which they extended to her the credit.   As *against the wife* that right is plain, and was never called in question.   It has only been controverted upon some counter claim of the husband, his assigns or creditors.

Where, therefore, the wife, as in this case, has title to property which the husband permits her to hold, use, and dispose of for the support of herself and children, in his neglect to do anything in that behalf—he interposing no claim in respect to said property, and she has obtained credit for the necessary means of living in reliance upon such property, and has expressly pledged it as security for the redemption of such credit, it would seem to be interpolating a new principle both in equity law and in ethics, to hold that she, or those standing in her right, may, in virtue of a technical rule of marital disability, evade that equity of her creditors.   It would be matter of some difficulty to assign a plausible, much more a solid reason for so holding,   It certainly could not be on the score of any countervailing

equity in her, for none such exists, but the contrary. Nor could it be on the score of disability, for that is excluded by well-known rules and settled principles of equity law.

The result of the views already presented seems to be fully warranted upon other grounds.

There are several ways, upon well-settled principles, in which, as against the husband, the property of the wife would be subjected to the support of herself and children.

In *Guy* v. *Pearkes*, 18 Ves. 196, the Lord Chancellor ordered the *Accountant-General* to sell stocks held under a will by a legatee whose husband had deserted her soon after marriage, and for several years had furnished nothing for her support, and to repay advances made from year to year by a friend of the wife for her support, who made such advances upon the faith of being repaid out of that fund, and that the dividends of the remaining fund be paid to her for her future support.

In the American notes to *Murray* v. *Lord Elibank*, Lead. Cas. in Eq. vol. 1, p. 496, it is said, " there is a class of decisions which indicate that, where the husband has misbehaved, and abandoned or illtreated his wife, so as to justify a divorce or separation, the wife's property in action, and it seems also even property not under the jurisdiction of the court, will be laid hold of by the court of chancery and appropriated to the support of the wife and her children;" and several cases to that effect are cited in different states. It is further said : " It may probably, also, be considered as established, that if the husband is entirely insolvent, and the wife is without means of support, equity will sustain a bill by the wife, through her next friend, against the husband, or his assigns or creditors, seeking to get possession of the property at law ;" and several cases to that effect are referred to.

In *Haviland* v. *Myers*, 6 J. C. R. 25, Chancellor KENT said : " The rule was settled that the wife's equity to a suitable provision for the maintenance of herself and her children out of her separate real and personal estate, descended or devised to her during coverture, was well established, and would prevail equally against the husband or his assigns, and against any sale made or lien created by him, even for a valuable consideration, or in payment of a just debt ; * * *

and this equity might be extended, if the circumstances of the case should require it, to the *whole* of the real and personal estate so devised or descended to the wife." This savors strongly of the idea that even as against the husband and those standing upon his right, the courts recognize a *separate estate* in the wife, for certain purposes, which was not created such by express terms,—for in that case the property was *inherited,*—not devised or conveyed by deed: See *Drummond* v. *Magee,* 4 J. C. R. 318. In closing a full, elaborate, and discriminating review of most of the cases bearing upon the wife's rights in equity as to her own property, it is said in the note above cited, on p. 501 : " The maintenance of the wife from her own property, in cases of the husband's neglect to provide for her, is, no doubt, a ground of original jurisdiction to be exercised upon a bill filed by her."

What has thus been said in the note, as above cited, and held in the cases referred to, we regard as sound in principle, and sustained by ample reasons. In the light of the law as thus established and administered, we think it would have been the clear duty of the court of chancery, upon the facts shown in the present case, upon the application of Mrs. Booth, as against any attempt of her husband to control or dispose of the property coming to her under Mr. Norton's will, to interpose in her behalf, and secure support for herself and children out of said property ; and in case of such support having been obtained on her credit, and in reliance on said property, to subject said property to the redemption of such credit, as a condition of entitling the husband to assert his marital rights in respect to it.

She, without occasion for invoking aid from that court, and with the acquiescence, at least, of her husband, made use of that property for just the purposes, and in just such a way, as a means of obtaining support for herself and children, as the court of chancery would have authorized her to make. Upon the strength of it she obtained credit for necessaries, and pledged it for the redemption of that credit. It is now submitted whether such use and disposition of it will be upheld and effectuated. At this point it is worthy to be repeated as a striking feature of the case, that not Mr. Booth, or any one standing in his right, but Mrs. Booth and her subsequent grantee in mort-

gage, are claiming to avoid the legitimacy of the use and disposition she made of the property in her transactions with the orators. No case is cited and no reason is assigned, *bearing upon the equities* growing out of those transactions, or the relation of the parties, why the defendants should be permitted to assert the invalidity of the orators' security. But the defence is rested upon implications educed from certain statutory provisions and upon arbitrary technical rules. We think the former are not warranted, and that the latter are inapplicable.

As between Mrs. Booth and the orators the equity is clear, and there is no warrant, either in law or morals, for permitting her or her subsequent mortgagee to call in question the validity of the security given by her to the orators.

As Mr. Moore took his mortgage with full knowledge of the existence of the mortgage to the orators, he is not entitled to the priority which he claims by reason of it.

As to his claim of a lien on the mortgaged property by reason of payments made by him as executor, nothing is shown in the case why the land in Granville and the debts due the estate have not been resorted to according to the provisions of the will. In order to entitle him to assert a lien upon the home-farm to affect any legitimate disposition that has been made of it, it is incumbent on him to show that the provision made in the will for the payment of debts and expenses, has been faithfully administered, and has proved inadequate. As to all this the case is entirely silent. There is, therefore, no ground for the lien claimed.

The *pro forma* decree of the chancellor is reversed, with costs, and the case remanded for a decree of foreclosure according to the prayer of the bill.