## ARMSTRONG vs. ROSS.

| 20 | 109 |
|----|-----|
| 49 | 62 |
| 49 | 468 |
| 20 | 109 |
| 51 | 143 |
| 20 | 109 |
| 58 | 420 |

1. The debts of a married woman holding an estate secured to her separate use by the act of 1852, when contracted by her for the benefit of her separate estate, or for her own use on the credit of that estate, will be charged by a court of equity upon the separate estate, and payment enforced out of it.

2. But such debts are not a lien upon her separate estate until made a lien by a decree of a court of equity; and the lien arises by virtue of the decree.

3. A married woman cannot charge her separate estate, held under the act of 1852, by an appointment, in writing, as she could formerly charge estates held by trustees for her, subject to her appointment; but can only convey or charge it by deed executed with her husband, and duly acknowledged upon a separate examination, except in cases where her husband is insane, or in state prison, or living separate from her by judicial decree.

4. The deed or mortgage of a married woman for lands in this state, though duly acknowledged, if made without her husband, is void.

5. Independent of the statutory provisions, an estate can be devised or given to a married woman for her separate use, directly, without the intervention of trustees; and in that case the husband will, in equity, be considered a trustee for the wife as to any estate which might by law vest in

him. ·But in such case the wife can not convey lands so devised to her separate use, without her husband joining in the deed, or without the acknowledgment required by a married woman.

6. A mortgage, by a wife upon her separate property, to secure a debt contracted for the benefit of that property, though void by reason of her husband not joining with her in its execution, and for want of a separate acknowledgment, will authorize a court of equity to charge that debt upon her separate estate generally. The giving of the mortgage shows the intention to charge her separate estate with it.

7. Where a mortgage on lands purchased by a married woman was given (and this was so stated in it), by her and her husband, to secure part of the consideration money, and was registered; but the mortgage as to the wife was void, because she had not been examined apart from her husband, *Held*—

1. That the recording was proper to give the debt priority upon the estate which might vest in the husband at the death of his wife.

2. That such recorded mortgage might be sufficient notice to a subsequent mortgagee, of the lien for unpaid purchase money on the estate of the wife. (In this case, actual notice was proved.)

8. The vendor of land has a lien for unpaid purchase money; and this lien is good as against subsequent purchasers for valuable consideration, with knowledge that it is unpaid.

9. The taking of a note, or bond, or mortgage, will not be held evidence of a waiver by vendor, of a lien on the premises conveyed, for purchase money. ·

10. Where a bill to foreclose contained no allegation that the complainant's mortgage was given for unpaid purchase money, or that subsequent mortgagees, made defendants, had notice of it before the mortgage to them, and the priority of the complainant's mortgage depended on these facts, and they appeared clearly in proof—*Held*, that the bill was defective, and no decree or relief founded on the facts above stated could be given unless they were set forth in the bill; but that the bill might be amended.

---

The hearing of this case was had upon bill, answer, and proofs.

*Mr. J. W. Taylor*, for complainant.

*Mr. John Chetwood*, for Clark, Dodge & Co.

THE CHANCELLOR.

The suit is for the foreclosure of two mortgages held by the complainant, on lands in Union county. The first is for $3500; this, or its priority, is not disputed by any one. The

second mortgage is one given by Elizabeth C. Vernam, with her husband, Remington Vernam, to Sally E. Libby, for $1571, and is dated June 14th, 1864, and was registered on the same day in the proper office.

The defendant, William Ross, holds a mortgage given by Elizabeth C. Vernam, without her husband, to Thomas Newton, to secure $5431, on the 16th day of June, 1864, two days after the mortgage to Sally E. Libby was given and registered; this mortgage was registered on the 20th of the same month.

The defendants, Clark, Maxwell, and Crawford, partners by the name of Clark, Dodge & Co., hold a mortgage given to them in the name of their firm, by R. Vernam, and Elizabeth his wife, for a debt of $1000, due to them by R. Vernam; this mortgage is dated October 12th, 1865, and was registered on the 25th of the same month.

Vernam and wife conveyed the mortgaged premises to Reuben Ross, junior, on the 1st of August, 1866. Reuben Ross has not answered; as against him and his wife, the bill is taken as confessed.

The acknowledgment of Mrs. Vernam of the mortgage to S. E. Libby, was taken without any private examination apart from her husband. The master before whom it was made supposing, as the property was her own, that it was not necessary.

The mortgage to Newton, although both parties resided in New Jersey, was acknowledged before a commissioner in New York by Mrs. Vernam, and the certificate shows that it was upon a private examination apart from her husband.

The mortgage to Clark, Dodge & Co., was properly acknowledged by both Mrs. Vernam and her husband.

Clark, Dodge & Co. and William Ross, contest the validity of the mortgage to Sally E. Libby, on the ground that it was not properly acknowledged. The statute requiring the private examination of a *feme covert*, is imperative. It enacts expressly (*Nix. Dig.* 145, § 4,) that no estate of a *feme covert* in any lands, shall pass by her deed or conveyance, without a previous acknowledgment, on a private ex-

amination apart from her husband. This statute is as binding in courts of equity as at law, and this instrument, as a conveyance of lands by way of mortgage, is void.

But it is insisted on the part of the complainant, that it is a valid lien or charge, because made by Mrs. Vernam to secure a debt contracted by her for her own benefit, and that of her separate property, and because the mortgage was a declaration of an intent to charge her property, and this specific part of her property, with this debt; and because the debt is due for part of the purchase money of this property, conveyed to her by the mortgagee, and it is so stated in the mortgage of which the other defendants had notice.

The property was conveyed to Mrs. Vernam since the married women's act of 1852, and by the provisions of that act is her separate estate. Long before the recent legislation with regard to married women, their separate estates have been recognized, and their rights, powers, and liabilities regarding the same been considered and regulated. Estates were conveyed to trustees for the use of married women, and for a long time trustees were considered necessary for the existence of a separate estate; but it has been held, and may be considered settled, that independent of the statutory provisions, an estate could be devised or given to a married woman for her separate use directly, without the intervention of trustees, and that in such case the husband would, in equity, be considered a trustee for the use of the wife, as to any estate which, by law, might vest in him; but it has never been held, that in such case, the wife could convey lands so devised to her separate use, without her husband joining in the deed, or without the acknowledgment required for married women.

The Court of King's Bench in England, once held that a debt incurred by a married woman for her separate estate, could be recovered at law. But this doctrine was long since overruled; and it is well settled that no such recovery can be had at law. But courts of equity, both in England and in this country, have determined that if a married woman having a separate estate, contracts debts for the benefit of

her separate estate, or for her own benefit on the credit of her separate estate, although she will not be held liable, or any decree made against her personally, these debts will be declared a charge upon her separate estate, and payment enforced out of it.

Lord Thurlow, in *Hulme* v. *Tenant*, 1 *Bro. C. C.* 16, laid the foundation of the doctrine, and its application was carried the farthest by Lord Brougham, in *Murray* v. *Barlee*, 3 *Myl. & Keene* 209, in which he holds that the separate estate of a married woman is liable to an attorney for his costs in a suit for her, at her personal engagement, without any writing or agreement that it should be paid out of her separate estate. Lord Cottenham, in *Owens* v. *Dickenson, Cr. & Ph.* 48, doubting the doctrine to the extent to which it was carried in *Murray* v. *Barlee*, holds that these debts of a married woman are not charged upon her estate because they are in the nature of an appointment, but because equity lays hold of her separate property, and compels the payment out of it, of such debts as she may have the right to contract by virtue of her separate estate.

Chancellor Kent, in *Jaques* v. *The Methodist Church*, 3 *Johns. C. R.* 77, held that a married woman having separate property, could charge it as a *feme sole*, but if a settlement prescribed a mode of appointment, it must be in that mode. The Court of Errors, in the same case on appeal, held that she could charge it in any other way, provided she was not by the terms of the settlement restricted to the way prescribed. *S. C.*, 17 *Johns.* 548. Chancellor Walworth, in *The North American Coal Co.* v. *Dyett*, 7 *Paige* 14, held that Mrs. Dyett could charge her separate estate by debts contracted for its benefit, by simply contracting the debt. He says : " A *feme covert* is as to her separate estate considered as a *feme sole*, and may bind it for the payment of debts contracted for the benefit of that estate, or for her own benefit, upon the credit of her separate estate." The same Chancellor, in *Gardner* v. *Gardner*, *Ib.* 112, says : A married woman " may have a separate estate of her own, which

K *

estate is chargeable, in equity, for any debt she may contract on the credit of, or for the use of such estate;" and again, "if the money was received by her, and applied to the use of her separate estate, then such separate estate was holden to pay the debt."

And Vice Chancellor Sandford, in the case of *Curtis* v. *Engel*, 2 *Sandf. C. R.* 287, says: "To sustain their suit, the plaintiffs must show that the debt was contracted either for the benefit of the separate estate of the wife, or for her own benefit, on the credit of the separate estate."

In this state, the same doctrine was held in *Leaycraft* v. *Hedden*, 3 *Green's C. R.* 512. A bond given by Mrs. Hedden, or by her authority, for money for the use of her separate estate, was held to create a debt chargeable upon her separate estate; and the Chancellor, in his opinion, says, that a *feme covert* as to her separate estate, may be held to be a *feme sole*, so far as to dispose of it in any way not inconsistent with the terms of the instrument by which she holds. He, like the others, limits the liability to debts contracted for the benefit of her separate estate, or for herself on the credit of that estate.

Since the passage of the statutes relating to married women, in New York and this state, the courts of both states have held that debts contracted by a married woman holding separate estates by virtue of these acts, may in equity be made a charge upon her separate estate. They hold that to make these debts a lien upon any specific part of the separate estate, there must be a mortgage executed, as required by the statutes and law relating to deeds of married women, and that a writing intended to be a mortgage, executed without regard to these requisitions, would not be valid as a mortgage or specific lien, but would show that the debt was contracted on the credit of her separate estate, and that she intended it to be chargeable thereon; and a court of equity would be authorized by such mortgage to make the debt a charge upon her separate estate. But they do not hold that either the contracting the debt, or the void mortgage declaring it an intent to make it a charge upon a specific.

part of the separate property, creates a charge or lien. To do so would repeal the law concerning the acknowledgments of married women, and in fact the statute of frauds; for a promissory note, with a verbal statement that it should be a lien on her homestead, would answer instead of a mortgage; it would create a charge, and not being a mortgage need not be recorded to have a priority over subsequent conveyances. Lord Cottenham, in *Owens* v. *Dickenson,* shows the impossibility of holding such debts to be encumbrances, and demonstrates that these debts are not a lien by any power of appointment, but by the decree of a court of equity making them such.

In *Wheaton* v. *Phillips,* 1 *Beas.* 221, Chancellor Williamson held that a debt contracted by a married woman having separate property, and by permission of her husband carrying on businesss for her own account, should be decreed a lien upon her separate estate. In that case the debt was contracted by her for the business she carried on. He gave no written opinion, and did not place his judgment on the ground of an appointment of her separate estate, but rather on the ground that remedies should adapt themselves to the times, and to new customs and manners as they arise.

In *Wilson* v. *Brown,* 2 *Beas.* 277, Chancellor Green held that a mortgage given by a married woman on her separate estate, without her husband joining, was void as a mortgage. In that case, the mortgage was for the purchase money of the land when conveyed to her, and of course the debt was contracted both for her benefit and for that of her estate; and the Chancellor held that the money advanced for the sole use of the wife, was a valid lien in equity upon the property of the wife, and that the mortgage was an appointment of her separate property for the payment of that debt. He does not declare that there was a valid lien on the specific lot, created by the bond or mortgage, but only that it was a lien upon, and an appointment of her separate property generally. And though from some expressions in his opinion it might be inferred that he regarded the void mortgage as a lien on the property, yet the clear

statement of the grounds of his decision shows, that it was based solely on the facts that the money was advanced to the wife for her own use, on the credit of her property, and that the mortgage showed her intention to charge her separate property. He likewise places some reliance on the fact that the mortgage was for the consideration money.

In the case of *Harrison* v. *Stewart*, 3 *C. E. Green* 451, the question again arose upon a mortgage given by a married woman on her separate property, executed without her husband, and without a separate examination. The mortgage was held to be void; but as the debt was contracted for the benefit of her separate estate, it was held that she had power to charge her separate estate with it, and that equity would enforce the charge; and her giving the mortgage was held to show her intention to charge her separate property.

The "act for the better securing the property of married women," passed in this state in 1852, is almost a literal transcript of the act of the state of New York of 1848. The decisions in that state upon its application and construction, are entitled to very great weight and respect. But in looking at them, we must keep in mind that by a supplement passed in that state in 1849, a married woman was enabled to convey and devise her separate property as if she were a *feme sole*. So far as regards the questions involved in the case in hand, the construction of these acts was settled in that state in the case of *Yale* v. *Dederer*, which was twice decided in the Court of Errors. In that case, Mrs. Dederer was owner of three farms, acquired after the acts of 1848 and 1849. She signed, jointly with her husband, a note given by him for farming stock. The plaintiff refused to take the husband's note without security, and she signed it with him, saying that if he was not able to pay she was; there were other circumstances showing that she intended to charge her separate estate. And in the finding of the facts of the case on the last appeal, it was stated " that she intended to charge and did expressly charge her separate estate for the payment of the note." The reputation and learning of the judges who delivered the opinions and controlled the decisions in

these cases, still further entitle their conclusions to our respect. They hold that the doctrine of the common law adopted in this country, by which a married woman was entitled to dispose of separate estates held in trust for her, was "a pure creation of the courts of equity." "That the right of disposition must be referred to the right of property enjoyed independent of the husband, and not to the theory of appointment pursuant to a power conferred by the author of the trust." "That the separate estate upon which courts of equity engrafted these peculiar doctrines, included only such rights and interests of the wife as would belong to the husband, but for the limitation of her particular use. That her own reversion (after her husband's curtesy) in lands which she owned at the time of her marriage, was a legal estate, descendible to her heirs, to which courts of equity did not and could not apply the doctrines which have been stated." "In case of an estate in fee conveyed directly to a woman after marriage for her sole and separate use, equity would convert the husband into a trustee for her, of the rents and profits during the coverture, which would otherwise belong to her, but in respect to the *corpus* of the estate, she could not dispose of it except in the manner prescribed by law for the disposition of estates in land by married women." In these doctrines I entirely concur, and they are supported by the ablest commentators. 2 *Story's Eq. Jur.*, §§ 1391 and 1392; 2 *Roper on Husband and Wife* 182; *Clancy on Rights of Married Women* 287. And the court holds that while the *jus disponendi*, clearly given to a married woman by the act of 1849, would make any written declaration of intent a charge upon her real estate, yet that the contracting of a debt, either by parol or in writing, could not charge that debt on her separate estate, unless it was contracted for the benefit of that estate. The Supreme Court of Massachusetts, in the case of *Willard* v. *Eastham*, 15 *Gray* 328, have adopted this doctrine; and the opinion of Judge Hoar in that case, is an able and lucid exposition of it.

In New Jersey, the legislature have never given to a mar-

ried woman the power of disposing of her estate as a *feme sole*, except in two cases—one where her husband is insane, or in the state prison, and the other where they are living separate by the decree of some competent court. In all other cases it has been carefully withheld, and the courts of the state cannot ignore the fact that the proposed acts to confer such power have more than once been rejected by the legislature. By the law of the state, the legal title to a married woman's separate estate is vested in her, as was the title to all her real estate before the acts for its protection. A way is provided in which she may legally convey and mortgage her real property by deed, upon separate examination and acknowledgment. It has been adopted, and adhered to since 1746. *Allinson's Laws* 132. It would be a great usurpation for the courts, by judicial legislation, to repeal this statutory provision. It still stands in the fourth section of the "act respecting conveyances," in the words in which it was enacted in 1799, "that no estate of a *feme covert*, in lands within this state, shall hereafter pass by any deed or conveyance made by her, without a previous acknowledgment, on a private examination apart from her husband." This act applies, in its terms, to the conveyance of lands held by a married woman as a *feme sole*, under the act of 1852, as well as to the legal estates held by her before that act. In New York, it was considered that the act of 1849 was necessary to enable her to convey and devise as a *feme sole*. And the reasons for the safe guards placed around married women, for their protection against the influence of their husbands, by the deliberation, delay, and form of a separate examination, are at least as great now as they formerly were.

There is no reason in the state of the law, for the courts to dispense, either with the joining of the husband or the separate examination. Every married woman can charge her property with her own or her husband's debts in this manner; and no debt should be held to be a specific lien upon any part of her lands, unless she has made it such in the manner provided by law, or unless this court should, upon

the principles adopted in the cases above mentioned, declare the debt a lien upon her separate estate generally, because contracted for the benefit of that estate, or for her own benefit on the credit of it. These decrees, like judgments at law on her ante-nuptial contracts or for torts, become liens on her real estate. And the characteristic remark of Lord Mansfield, quoted by the Chancellor as the basis of his decision in *Wheaton* v. *Phillips,* " that remedies must adapt themselves to the times, and to new customs and manners as they arise," does not require the courts to hold that rights newly created, which are as a class provided for by, and comprised in existing statutes, both by the words used and because they are within the object and intent of those statutes, are beyond their provisions, because newly created or recently enlarged. To hold that a married woman could by parol, or otherwise than by writing duly acknowledged, create a lien on her lands, or any specific part, would raise the question of conflicting priorities, which startled Lord Cottenham in *Owens* v. *Dickenson,* and so far as the separate estates of married women are concerned, overthrow our well digested and beautifully arranged system of record priorities, and place the title of all such estates in a miserable uncertainty.

It is settled, that in this state the deed of a married woman, although duly acknowledged, if made without her husband, is void. *Den d. Rake* v. *Lawshee,* 4 *Zab.* 613; *Moore* v. *Rake,* 2 *Dutcher* 574.

For the decision of this case, these propositions then will be assumed as settled rules of law:

1. That the debts of a married woman, holding estates secured to her separate use by the act of 1852, when contracted by her for the benefit of her separate estate, or for her own use on the credit of that estate, will be charged by a court of equity upon that separate estate, and payment enforced out of it.

2. That such debts are not a lien upon her separate estate

until made a lien by a decree of a court of equity, and that the lien is by virtue of the decree.

3. That a married woman cannot charge such separate estates by an appointment in writing, as she could charge estates held by trustees for her, subject to her appointment; but can only convey or charge them by deed executed with her husband, and duly acknowledged upon a separate examination, except in the case where her husband is insane, or in state prison, or living separate from her by judicial decree.

The mortgage given by Mrs. Vernam to Mrs. Libby, and now held by the complainant, not having been acknowledged on a separate examination, is void as a mortgage. But the debt for which it was given, being for part of the purchase money of the lands constituting the separate estate of Mrs. Vernam, was for the benefit of her separate estate, and was also for her benefit; and the mortgage showing that it was contracted on the credit of that estate, and intended to be charged upon it, it will be made a charge upon her separate estate. But as this will only become a lien by virtue of the decree, it would be subject to the mortgage subsequently given to Clark, Dodge & Co., and executed according to law.

But the mortgage to Mrs. Libby is for the consideration money for which the land was conveyed by Mrs. Libby to Mrs. Vernam, and it so appears on the face of the mortgage; and it is proved that Clark, Dodge & Co. had express notice of the mortgage to Mrs. Libby, before and at the time of taking their own mortgage. Legal notice might be perhaps inferred from the registry, as the mortgage was properly recorded; the acknowledgment of the husband was legal, and the recording was proper to give priority upon the estate by curtesy, which might vest in him at the death of his wife. Such notice, or any notice sufficient to put them on inquiry, will be held as notice of the contents of that mortgage, in the same manner as if they had inquired for it, and had been shown it. They must, therefore, be held to have had knowledge that the debt was for part of the purchase money of the land, still unpaid. The vendor of land has a lien for unpaid

purchase money, and this lien is good as against subsequent purchasers for valuable consideration, with knowledge that it is unpaid. It was so held in this court, pursuant to the well settled doctrine in equity, in the case of *Brinkerhoff* v. *Vansciver*, 3 *Green's C. R.* 251. The taking of a note or bond will not be held evidence of a waiver of the lien; and taking this mortgage which, though void, shows an intention to preserve the lien, surely will not be held a waiver of it. The complainant is entitled to have the amount due on the Libby mortgage declared a lien upon the premises, prior to the mortgage to Clark, Dodge & Co., as unpaid purchase money.

But there is no allegation in the bill that the Libby mortgage recited that it was given for unpaid purchase money, or that the defendants, Clark, Dodge & Co., had notice of it before the mortgage to them; and although these facts appear clearly on proof, no decree or relief founded on them can be given unless they are set forth in the bill. The complainant must be allowed to amend her bill in this respect, it being a mere formal defect.

Upon the principles laid down, it must be held that the mortgage given to Thomas Newton, now held by the defendant, William Ross, is void. It was executed by Mrs. Vernam alone, without her husband. And as it is no lien on the lands, it cannot be made so in this suit, even if it had been shown that the debt had been contracted for the benefit of Mrs. Vernam's separate estate, or for her own benefit. A defendant in a suit in equity can have no positive relief that requires the action of the court in his favor, as by declaring a debt a lien that was not such before. Upon filing a bill for that purpose, this debt might be declared a lien upon her separate estate, but that cannot be done in this suit.

The complainant is entitled to a decree for the foreclosure and sale of the mortgaged premises, and to be paid out of the proceeds of sale, first, the amount due on the first mortgage for $3500; secondly, the amount of the unpaid consideration money intended to be secured by the mortgage to Mrs. Libby, with the interest thereon; and thirdly, her costs

of suit.   Out of the residue, Clark, Dodge & Co. are entitled to be paid the amount due on the mortgage to them; and the residue, if any, must be paid to Reuben Ross, junior.