As this action was commenced in 1857, it must be determined by the rules of the common law, irrespective of the alterations made by our recent statutes in the laws affecting husband and wife.
It cannot be said that the husband of the defendant was ever liable ex contractu to pay for the goods. They were not necessaries, and there is no allegation in the complaint that he knew of the purchase of the goods by his wife, or that they ever came to his possession.
There was, therefore, no implied promise on the part of the husband to pay for the goods. Story says: "If credit be given solely to the wife, the husband is not liable, although they live together, and although he see her in possession of the goods bought. If, therefore, the tradesman should take her promissory *Page 606 
note in payment, which would plainly indicate a reliance on her personal credit, the husband would not be liable for the price of the goods, nor on the note, nor need he prove that the goods were not necessaries." (Story on Contracts, 4th ed., § 103; 2 Bright. on Husb. and Wife, 17, 18.)
But the vendors could have maintained an action against the defendant and her husband jointly in the lifetime of the latter to recover possession of the goods, or for a conversion thereof by the former, on the ground that the goods were fraudulently obtained by the wife by falsely holding herself out to be unmarried and doing business as a trader in her own name and for her own personal benefit and advantage; and I will not say but an action on the case for damages for the fraud would have lain against the husband and wife jointly. KENT says: "The husband is liable for the torts and frauds of the wife, committed during coverture. If committed in his company or by his order, he alone is liable. If not they are jointly liable, and the wife must be joined with the husband." (2 Kent's Com., 9th ed., 138; 2 Bright. on Husband and Wife, 79, 80; 1 Story on Con., 4th ed., § 109; Reeve's Dom. Rel., 2d ed., 72, 73.) By reason of the fraud of the wife the title to the goods remained in the vendors, and the possession or conversion thereof by the wife was wrongful. (Cary v. Hotailing, 1 Hill, 311; Nichols v. Michael,23 N Y, 264.) Hence the right of the vendors to maintain either of the actions formerly called replevin and trover for the goods.
When the wife commits a tort by order of her husband, or in company with him, he alone is liable; and in case of his death, the cause of action does not survive against the wife. (Reeve's Dom. Rel., 2d ed., 72.) But if the tort be not committed in the presence of the husband, or by his order or request, the wife is also liable and must be joined in the suit with her husband. The wrong is in such a case considered as her wrong, and the husband is answerable with the wife, for a similar reason to that of his liability for her contracts before marriage. (Reeve's Dom. Rel., 2d ed., 72.) I am of the opinion, a cause of action for such a wrong survives against the wife on the death of her husband. *Page 607 
It was held by Lord ELLENBOROUH in Woodman v. Chapman, (1 Camp., 189), that a debt contracted by the wife before marriage, survives against her, upon the death of her husband; and such holding was undoubtedly correct. It is laid down by Macqueen on Husband and Wife, (Law Library, 4th series, vol. 34, p. 123), that "causes of action survive against the wife, which accrued during the coverture in respect of her real estate, or for any personal wrongs done by her when sole." The only authority cited by him for this rule is the note by Lord CAMPBELL to the above case of Woodman v. Chapman, and the language of that is, that "causes of action survive to the wife, which accrued during the coverture in respect of her real estate or for any personal wrong done her." But whether the doctrine laid down by Macqueen is or is not supported by the authority cited by him, it rests upon the same principle that makes the debts of the wife contracted before her marriage, which are not recovered of the husband and wife during the life of the former, survive against the latter, and therefore is good law. The personal representatives of the husband cannot be charged with such debts; and on similar principles they must be exempted from liability for torts of the wife committed in the absence of her husband, and not in his business, and without his concurrence or knowledge; for such torts, as has already been seen, are considered her torts. (Cox
v. Kitchin, 1 Bos. Pull., 338.)
The only authority I have found, which seems to militate against any of the foregoing conclusions, is the decision of the Court of Exchequer in Fairhurst Wife v. The LiverpoolAdelphi Loan Association (26 Eng. Law and Eq., 393), where it was held that an action will not lie against a husband and wife, for a false and fraudulent representation by the wife to the plaintiffs, that she was sole and unmarried, at the time of her signing a promissory note as surety to them for a third person, whereby they were induced to advance a sum of money to that person. The opinion of Judge REEVE is to the contrary. (Reeve's Dom. Rel., 2d ed., 72, 73.) But if the decision of the Court of Exchequer be correct, it is placed on the same ground *Page 608 
on which an infant is exempted from liability for damages in actions for wrongs, when founded on contract; and when goods are sold to an infant on credit, and he avails himself of his infancy to avoid payment, the vendor may reclaim the goods as having never parted with his property in them. (Badger v. Phinney,15 Mass., 359.) Either what was formerly called trover or replevin, may be maintained for the goods in such a case. (Wallace v. Morss, 5 Hill, 391.) In such a case the action is brought in disaffirmance of the contract, and on the ground that the vendor still retains the title to the goods. Upon the same principle, either an action to recover possession or one for conversion could have been maintained against the defendant and her husband for the goods sold to the former in this case. And should we concede that the vendors could not have recovered in an action against them for damages merely, for the fraud of the wife in obtaining the goods, there still remained two kinds of action, either of which could have been maintained against her as well as her husband; and the cause, therefor, survived against the defendant on the death of her husband.
If these views are correct, the promise of the defendant after the death of her husband to pay for the goods, and to pay the notes given for them, was an undertaking by her to pay, a demand for which a cause of action existed against her, from the time she purchased the goods, and therefore was founded on a good and sufficient consideration, and is clearly obligatory upon her.
There is another view of the case which shows the promise of the defendant to pay for the goods and pay the notes she gave therefor, was founded upon a sufficient consideration.
I am aware the general rule is that a moral obligation is not alone a sufficient legal consideration to support a promise. (1 Story on Cont., 4th ed., §§ 465 — 469; Chitty on Cont., 9th Am. ed., pp. 48, 49; 24 Wend., 97; 1 Hill, 532; 5 id., 306.) And the Superior Court of New York City went so far in Watkins v.Halstead (2 Sand. S.C., 311), which case was followed by the Supreme Court in this, as to adopt the language of a note toWennall v. Adney (3 Bos. Pul., 252), where it was said that *Page 609 
"an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision." But this rule is too broad, or at least there are exceptions to it. For there are cases where a moral obligation, that is founded upon an antecedent valuable consideration is sufficient to sustain a promise, though the obligation on which it is founded, never could have been enforced at law. In other words, a moral obligation is sometimes a sufficient consideration for an express promise, if at some time or other, a good or valuable consideration has existed, although there never was a time prior to such express promise when any portion of the precedent consideration could have been enforced at law or in equity through the medium of any promise. To illustrate: If money be loaned upon usury, and usurious security taken therefor, such security is absolutely void and no action can be maintained upon it; nor is it evidence of an indebtedness, upon the strength of which the law will imply a promise on the part of the borrower, to repay the amount actually received by him. The express contract being absolutely void, no implied obligation can spring from it. The lender cannot waive or abandon the usurious agreement so far as it is illegal, and enforce it for the residue. The contract is one; no matter what the nature or numbers of the securities may be, all are void. The contract cannot be broken up and resolved into its original parts or elements, so as to get rid of the illegal taint, without the consent of both parties. But if it is mutually abandoned, and the securities are canceled or destroyed, so that they can never be made the foundation of an action, and the borrower subsequently promise to pay the amount actually received by him, such promise is legal and binding. It is founded upon an equitable and moral obligation, which is sufficient to support an express promise. The money actually lent when legally separated from the usurious premium, is a *Page 610 
debt in equity and conscience, and ought to be repaid. (Per
SUTHERLAND, J., in Hammond v. Hopping, 13 Wend., 511, 512;Miller v. Hull, 4 Denio, 104; Chitty on Cont., 9th Am. ed., 712, 713; 1 Story on Cont., 4th ed., § 603; 2 Pars. on Con., 3d ed., 397; Parson's Mercantile Law, 257; Barnes v. Headly, 2 Taunt., 184.)
In Lee v. Muggeridge (5 Taunt., 35), a feme covert,
having an estate settled to her separate use, gave a bond for repayment, by her executors, of money advanced at her request, on security of that bond, to her son-in-law; and after her husband's decease, she wrote, promising that her executors should settle the bond, and it was held that assumpsit would lie against the executors on such promise of the testatrix. That case was not overruled by the decision in Meyer v. Haworth (8 Adol. 
Ellis, 467); though it must be conceded it was very much weakened as an authority in England, by Eastwood v. Kenyon. (11 Adol. Ellis, 438.) And Littlefield, Executrix, c., v. Shee (2 Barn. Adol, 811), was put mainly upon the ground that the price of the goods originally constituted a debt from the husband, though Lord TENTERDEN in deciding it said he must also observe, "that the doctrine, that a moral obligation is a sufficient consideration for a subsequent promise, is one which should be received with some limitation." Lee v. Muggeridge has never been overruled in this State. Smith v. Wane (13 Johns., 257), does not do it; for that was a case to recover back money the plaintiff had paid the defendant for land, the former claiming there was a deficiency in the number of acres; and Judge SPENCER, in delivering the opinion of the court, said: "It cannot be pretended that the defendant was under any moral obligation to pay for the deficiency in quantity of land sold and conveyed to the plaintiff." All that was decided in Ehle v. Judson (24 Wend., 97), was that a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not a sufficient consideration to support a promise; and Judge BRONSON, who gave the opinion of the court, said: "The moral obligation to pay a debt barred by the statute of limitation, or an insolvent's discharge, or to pay a debt *Page 611 
contracted during infancy or coverture and the like, will be a good consideration for an express promise." In Wilson v. Burr
(25 Wend., 386), it was held the plaintiff would recover his claim of $200, counsel fees; and the court said: "It is true, at the time of the retainer the defendant was a feme covert; but she was soon after divorced, and it is to be presumed subsequently recognized the services rendered."
There are some, perhaps many, broad assertions in our reports going to show that the promise of the defendant in this case is not obligatory; and the reasoning tends that way in the following cases: (Geer and Wife v. Archer, 2 Barb., 420; Nash v.Russell, 5 id., 556; and Ingraham v. Gilbert, 20 id., 151.) But there are equally broad expressions in our reports the other way; and the reasoning in such cases as Doty v. Wilson (14 Johns., 378), and others I might mention, certainly tends to the conclusion that such promise is binding, as, in justice, it clearly ought to be.
The goods were sold and delivered by the vendors with the expectation on their part, that they would receive pay for the same, and upon the defendant's express promise that she would pay for them, and under such circumstances that the vendors had no claim therefor against her husband. The goods were valuable and the defendant personally received the benefit of them; and the price she agreed to pay therefor, is a debt which, "in equity and conscience," she ought to pay. In other words, she ought in common honesty to pay for the goods. Her promise so to do was made for value actually received by her personally; and it was to discharge a moral obligation founded upon an antecedent valuable consideration, created for her own personal benefit, and at her special instance and request; and I am of the opinion the law makes such promise obligatory upon her.
It seems to me that the defendant's moral obligation to pay this debt is so interwoven with equities as to furnish a good consideration both upon principle and authority for her promise to pay it. I will add that the fact is controlling with me, that the defendant personally received a valuable consideration for *Page 612 
the money she has promised to pay, and this distinguishes the case from some that seem to weigh against the conclusion that the defendant's promise is valid.
It is unnecessary to notice any of the recent changes made by the Legislature in the law, affecting husband and wife as they are all inapplicable to the case, which must be determined as the law was when the alleged cause of action accrued.
For the foregoing reasons, I am of the opinion the complaint states facts sufficient to constitute a cause of action, and that the judgment of the Supreme Court should be reversed, and judgment given for the plaintiff on the demurrer with costs; but with liberty to the defendant to apply to the Supreme Court for leave to answer on terms.