## J. B. HUBBARD *v.* SUSAN A. BUGBEE.

*Note of Married Woman. Consideration of Written Promise to pay Made After Death of Husband. Moral Obligation.*

The defendant being a married woman executed her promissory note for borrowed money for the *improvement of her separate real estate.* After the death of her husband, she, being *sole*, promised in writing to pay the amount of the note. In an action brought upon the promise; *held,* that the consideration was ample, and the promise legally binding upon her.

ASSUMPSIT. Heard on demurrer, December Term, 1882, Ross, J., presiding. Judgment *pro forma* for the defendant. The dec_

laration averred that the defendant, being a married woman, executed her promissory note ; and that after the death of her husband she, being *sole*, promised in writing to pay the note.

*Cahoon & Hoffman*, for the plaintiff.

The law is well settled that the debts of a married woman contracted in the management of her separate estate, and for its benefit, on the credit of such estate, in equity will be enforced against such estate. *Sargeant* v. *French*, 54 Vt. 391 ; *Dale* v. *Robinson*, 51 Vt. 20 ; *Priest* v. *Cone*, Ib. 495 ; 46 Ala. 170 ; 60 Barb. 406 ; 3 U. S. Dig. N. S. 335 ; 48 Miss. 486 ; 37 Md. 510 ; 47 Cal. 32 ; *Kelley* v. *Long*, 4 Hun. 714. The intention of a married woman to charge her separate estate is to be inferred from the fact that she gave her note. *Phillips* v. *Graves*, 20 Ohio St. 371 ; 35 Ohio St. 297 ; *Williamson* v. *Duffey*, 19 Hun. 312 ; *Schafroth* v. *Ames*, 46 Mo. 114 ; 4 U. S. Dig. 35 ; 70 N. Y. 295 ; 45 Ala. 370. In general a married woman is liable, so far as she has separate estate, for her debts ;—in some States at law, and in others at equity. *Batchelder* v. *Sargeant*, 47 N. H. 262 ; 110 Mass. 51 ; 11 U. S. Dig. N. S. 434. If her estate was liable in equity, the consideration for the promise was sufficient. *Booth* v. *Fitzpatrick*, 36 Vt. 608 ; *Blodgett* v. *Skinner*, 15 Vt. 716 ; Chit. Con. 52, n. ; *Vance* v. *Wells*, 8 Ala. 399 ; *Geer* v. *Archer*, 2 Barb. 420 ; *Cook* v. *Bradley*, 7 Conn. 57.

*Harry Blodgett* and *M. Montgomery*, for the defendant.

The defendant being a married woman at the time she gave the note, her promise to pay is absolutely void. *Brown* v. *Sumner*, 31 Vt. 671 ; *Dale* v. *Robinson*, 51 Vt. 20 ; Ib. 495. The promise of the defendant in writing after the decease of her husband was without sufficient consideration. *Haywood* v. *Baker*, 52 Vt. 430 ; 1 Parsons Con. 432, n. ; *Jenning* v. *Brown*, 9 M. & W. 501 ; *Eastwood* v. *Kenyon*, 11 A. & E. 438.

The opinion of the court was delivered by

REDFIELD, J. This is a demurrer to the declaration. It alleges in substance that the defendant, then a married woman, and the

owner in her own right of a farm in Concord, borrowed money of Lucy M. Hubbard, and used the money in the improvement of her said farm; and after the death of her husband, and when *femme sole*, she promised in writing, in consideration of said loan and her moral obligation to pay said debt, to pay said note to the plaintiff, who is the *bona fide* holder and bearer of said note for value.

Was there such *moral obligation* that the promise was legally binding upon the defendant? Our attention has been called to *Haywood* v. *Baker*, 52 Vt. 430. We have no occasion to question the soundness of the opinion of Judge BARRETT in that case, although the reasoning is wholly technical. The rights and duties of married women have within the last few years not only been much modified, but in some jurisdictions been wholly changed. Ch. J. SHAW, speaking of the legal condition of a *femme covert*, under the common law, said " a man and his wife are *one*, and that *one* is the husband." But it is now known and recognized that a man and his wife are *two*, and often the important personage of the two is the *wife*. And it is not a *fortunate*, nor, as we think, a strictly *correct*, use of language to say that contracts of married women are *void*. It has always been recognized in this State and elsewhere, that money contracts of a *femme covert* are binding on the conscience; and a court of equity will compel her to respond and pay what in conscience she ought to have paid. She is, it is true, under the *disability of coverture*, and at law there are insurmountable difficulties in reaching her or her separate property by the process of court. But her contracts as to using and improving her separate estate are in no sense *void*, but binding contracts upon the person and property of a married woman. She could not, to be sure, be imprisoned. The law forbids that; but her conscience could be charged and her separate estate. And as the *rights* of married women become enlarged, their reciprocal and correlative duties do, and should, keep pace with them, so that the administration of the law shall be consistent with itself. This woman owning a farm as her separate estate hired this money to improve and render beneficial to her her estate. She gave her note for the money and used it improving

Hubbard *v.* Bugbee.

and enhancing the value of her property. After her husband died she continued to receive and enjoy this improved use and enhanced value of her estate, arising from this loan of money, recognized the binding obligation of her note given for it, and promised in writing to pay it. It cannot be said, without discarding the the whole reason, web and structure of the law, that no moral *duty* rested upon her to pay this loan of money which had become incorporated into her separate estate. On the other hand as she had the *right* to enjoy the beneficial use of the money in her separate estate, so there rested upon her the correlative *duty* of paying for it; and this *duty* could have been enforced against her property. When she promised in writing to pay what she was bound in conscience to pay, she was under no disability of coverture; and we think the consideration was ample to require her to " do as she agreed." If this were not so, then the law in reference to married women is rather " a delusion and a snare," than a beneficent provision to relieve married women from the unreasonable disability which barbarism had entailed upon them. The demurrer is overruled, and on motion of the defendant the cause is reversed *pro forma*, and remanded that defendant may replead on the usual terms.