## DANIEL SHERWIN *v.* UNITY SANDERS.

*Married Woman, Promise of. Separate Estate. Promise after Coverture ceases. Consideration.*

1. The promise of a married woman, having a separate estate, to pay for necessaries furnished her upon the credit of her estate, is a sufficient consideration for a new promise to pay for them made after the death of her husband.

2. The Supreme Court will not consider questions which have not been raised in the court below.

GENERAL ASSUMPSIT. Plea, general issue. Trial by jury, September Term, 1886, WALKER, J., presiding. Verdict for the plaintiff to recover $77.13.

The plaintiff sought to recover an account extending over a period of time from May 1, 1874, to June 11, 1883, inclusive, and amounting, exclusive of credits, to $150.79. From May 1, 1874, to August 10, 1878, sixty-two and 22-100 dollars of the foregoing amount was charged to William Sanders, the defendant's husband. The balance of said account from said August 10, 1878, to June 11, 1883, was charged to "William and Mrs. William Sanders."

The goods charged for in the accounts were sold and delivered by the plaintiff, at the several dates charged, from his store in Jamaica to the defendant, her husband, or to some one of the members of defendant's family, and were of a kind suitable and necessary for use in a family and for persons of their degree and circumstances in life to have.

William Sanders was in very poor health and pecuniarily irresponsible; but that portion of the goods sold and delivered previous to August 10, 1878, and charged to him, were sold and delivered upon his credit alone.

The plaintiff's evidence tended to show, that a few days before August 10, 1878, the defendant and her husband came to his store to see him relative to a letter received from the Pen-

Sherwin *v.* Sanders.

sion Department concerning the defendant's application for a pension as a dependent mother; that the said defendant remarked to the plaintiff that she supposed they were owing him a considerable of a store bill, and that if he would write the department a favorable response to the letter he had received, if her pension was allowed, she would pay the store bill which had already accrued and stood charged to her husband, and would hold herself responsible for and pay him for such other goods as he should in the future sell and deliver out of his store for use in her family; that pursuant thereto, and on the same day, plaintiff wrote out the following statement at the foot of the account which up to that time he had kept in the name of "William Sanders": "August, 1878. Mrs. Wm. Sanders guarantees the payment of the old debt to here, and becomes responsible for goods hereafter obtained;" and then opened and thereafter kept his account with her in the name of "William and Mrs. William Sanders;" that plaintiff wrote a letter to the Pension Department, and on the 24th day of August, 1878, a pension certificate was issued, granting unto her a pension at the rate of $8 per month, and for several hundred dollars of arrears; that the said William Sanders died in September, 1884, and that the said defendant had never remarried; that the plaintiff had called on defendant at two or three different times since her husband's decease and before suit was brought and requested her to pay the whole account or some portion thereof; that she had always expressed her willingness to pay the same, and had promised that she would pay the plaintiff whenever she could sell one of the houses erected upon said real estate, or could obtain the money in some other way; but that she had never paid any portion of said account.

The defendant denied making the promises. The plaintiff was limited to what goods were sold after August 10, 1878.

*A. E. Cudworth* and *Haskins & Stoddard*, for the defendant.

The plaintiff failed to show that the defendant had a separate estate.

If in August, 1878, the defendant was not vested with a *separate estate* created for her benefit and to the exclusion of the husband's rights, she was wanting in capacity both legal and equitable to make contracts chargeable upon the lands to which she held the title deed. *Hubbard* v. *Bugbee*, 58 Vt. 172.

The evidence disclosed no facts which could furnish the foundation or consideration of a promise to pay plaintiff's claim after she became *sole;* and without this the defendant was clearly entitled to a verdict.

The defendant in August, 1878, having no *separate estate* secured to her and for her exclusive benefit, she had no estate which she could charge either in law or equity. Her contract of August 10, wherein it is claimed she made her estate chargeable for goods delivered in the future to her family, was void. And this court has said that, "From her void contracts no moral obligation arises which can be a sufficient consideration for a new promise, express or implied, to perform them." *Hayward* v. *Barker*, 52 Vt. 429 ; *Hubbard* v. *Bugbee, supra; Sargeant* v. *French*, 54 Vt. 384.

*Waterman & Martin*, for the plaintiff, cited, to prove a sufficient consideration for the promise, 2 Story Eq. s. 1397 ; *Priest, Barber & Co.* v. *Cone*, 51 Vt. 495 ; *Dale* v. *Robinson*, 51 Vt. 20 ; *Partridge & Co.* v. *Stocker & Co.* 36 Vt. 103 ; *Sargeant* v. *French*, 54 Vt. 384 ; *Hubbard* v. *Bugbee*, 58 Vt. 172 ; 55 Vt. 506 ; *Howe* v. *Chesley*, 56 Vt. 727 ; 1 Lead. Cas. Eq. 496 ; *Frary* v. *Booth*, 37 Vt. 78.

The opinion of the court was delivered by

POWERS, J. The jury has found that the defendant, whilst she was a married woman having a separate equitable estate, promised to pay the plaintiff for goods needed in her family, which he sold to her upon the credit of such estate, and that

Sherwin *v.* Sanders.

after the death of her husband she again expressly promised to pay the same debt.

This action is assumpsit based upon the latter promise.

In the court below the defendant took no issue upon the question whether she in fact had a separate estate capable of equitable pledge for necessaries sold upon its .credit; but she stood for her defence upon the ground that her promise made while covert was valid at law and capable of enforcement in equity only against her separate estate, and that her promise, . after coverture ceased, was without legal consideration to uphold it.

This court sits for the correction of errors made by the County Court in the trial of cases upon the issues made up by the parties. We have no authority to make up a new issue not raised in that court and proceed to determine it for the first time. If no ruling is made by the County Court upon a question that might have been raised, it is plain that no error is predicable of that question.

The court below treated the question of the existence of a separate estate as a fact, not disputed, as the parties treated it. It was not directly presented as it was in *Hubbard* v. *Bugbee*, 58 Vt. 172. There the referee directly presented the facts upon which it was to be determined whether a separate estate existed. It was such and no other, as the will conferred, and the referee submitted to the court whether the promise found, in view of the estate created by the will, was binding at law upon the defendant.

Here, however, the terms of the deed are not disclosed, and were not considered by the County Court, and that court had no call to construe them. The argument, therefore, in behalf of the defendant upon this branch of the case should have been addressed to the court below.

We have no occasion to repeat what was said in *Hubbard* v. *Bugbee* respecting the facts essential to the creation of a separate equitable estate in married women.

If such estate exists the married woman may pledge it for

necessaries for herself and family. It must fairly appear that she intends to have the party dealing with her rely upon the credit of her estate, and that he does rely upon it. This much appearing the equitable contract is perfected. During coverture, and by reason of coverture, this contract must be enforced by equitable remedies. After coverture a new promise to perform it is based upon sufficient consideration. During coverture a married woman's promise does not bind her personally, but having a separate equitable estate, respecting which she is not clogged by the fetters of coverture, her promise charges her conscience and binds her estate to fulfill it. The authorities cited in *Hubbard* v. *Bugbee, supra,* fully sustain this position.

The case of *Lee* v. *Muggeridge,* 5 Taunt. 36, was, like the case at bar, an action of assumpsit based on the promise of a widow having a separate estate to pay a debt contracted on the credit of such estate during coverture. The question was whether her promise after coverture was based on sufficient consideraation. Lord MANSFIELD said : "It has been long established that where a person is bound morally and conscientiously to pay a debt, though not legally bound, a subsequent promise to pay will give a right of action." HEATH, J., said, "the notion that a promise may be supported by a moral obligation is not modern."

This case has been criticised somewhat, not on the ground that upon the special facts appearing, the decision was wrong, but that the propositions laid down were too broad for general application. *Eastwood* v. *Kenyon,* 11 A. & E. 447 ; *Beaumont* v. *Reeve,* 8 Q. B. 487 ; 1 Parsons Con. 432, n.. (s).

In these cases it is said that the subsequent promise is binding only when the antecedent obligation was a *legal* one.

It is not improbable that this qualification of the rule laid down in *Lee* v. *Muggeridge* itself needs qualification. If the antecedent obligation is an *equitable* one, that is, one that equity would enforce, Lord MANSFIELD's doctrine is easily harmonized with that of his critics. Baron PARKE, in *Earle*

v. *Oliver*, 2 Exch. 71, has harmonized both views as follows : "The principle of the rule laid down by Lord MANSFIELD is that when the consideration was originally beneficial to the party promising, yet, if he be protected from liability by some provision of the statute or common law meant for his advantage, he may renounce the benefit of that law, and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by law to perform it."

In a later case, *La Touche* v. *La Touche*, 3 Hurl. & Colt. 576, it was held that a promissory note given by a widow to extinguish a balance due upon her note given during coverture, which bound her separate estate, and which was barred by the Statute of Limitations, was based on good consideration. CHANNELL, B., said : "The note of 1848, although made during coverture, was binding on the defendant's separate estate. Unless something occurred to discharge the defendant's separate estate from liability, there was, we think, a good consideration for the note now sued upon, made by her after her coverture was determined." In *Rusling* v. *Rusling*, 47 N. J. L., 1, Ch. J. BEASLEY, in discussing an analogous principle, formulates the rule thus : "By such a promise, what before was an equitable obligation is converted into a legal obligation."

In *Vance* v. *Wells*, 8 Ala. 399, it was held that when goods are furnished to a married woman on the faith of her separate estate, there is such a moral obligation to pay the debt as will support an action at law on a promise to pay after the coverture has ceased.

In *Goulding* v. *Davidson*, 26 N. Y. 604, the same doctrine was laid down in a similar case.

In the case at bar, the defendant received value to her own use from the plaintiff, who relied upon her promise to pay and upon her separate estate as the means of enforcing pay. Her *promise*, by the accident of her coverture, was void at law, but valid in equity. Her subsequent promise to pay after coverture is clearly founded upon good consideration.

The item of $8.45 was properly dealt with by the court. The jury found it was for necessaries for the family, and the goods were procured by Hiland at the defendant's request. Hiland's willingness to pay his mother's debt does not absolve her from it. There is more question respecting the $20 item. But the case fairly shows that this item was disallowed by the jury, so the defendant has suffered no harm.

The judgment is affirmed.