SAMUEL W. BUCKINGHAM AND ANOTHER *vs.* JAMES M. OSBORNE.

An officer having attached personal property, undertook to complete his service of the writ by leaving a copy, with his doings endorsed upon it, at the usual place of abode of the defendant, as required by statute, but by mistake left it at the wrong place, and the writ on this ground was afterwards abated. After the attachment and before the session of the court the property was sold by the officer under the statute authorizing the sale of attached property that is perishable or expensive to keep. In trespass for taking and converting the property, brought against the plaintiff in the attachment suit, it was held—
1. That the return of the officer that he had left the copy at the defendant's place of abode, was open to contradiction. 2. That the attempted service was of no effect. 3. That the writ and proceedings under it were no justification in the present suit.
A party has no power to rescind a contract of purchase unless there is a provi-

sion in it giving him the right to do so. If the property purchased does not answer the terms of the contract, there being no fraud in the case, his only remedy is by a suit for the breach of the contract.

Where a contract of sale of personal property is inoperative under the statute of frauds for want of delivery, a tender made afterwards, and an unconditional acceptance, have the same effect between the parties as if the delivery had been made at the time of the sale.

TRESPASS for taking and carrying away a horse belonging to the plaintiffs; brought to the Superior Court in Litchfield County, and tried to the court, on the general issue with notice, before *Martin, J.* The court found the following facts:

In April, 1871, the plaintiffs agreed with the defendant to purchase of him the horse described in the declaration, for $150, payable within thirty days thereafter. The horse was not at that time delivered to the plaintiffs, nor was anything given to bind the bargain, or any note or memorandum in writing of the agreement made and signed by the parties or either of them.

The defendant subsequently delivered the horse to the plaintiffs at the town of Oxford, and it remained in their possession for two or three days, when, on or about the 1st day of May, 1871, they returned it to the defendant, and left it on his premises, claiming that by the terms of the agreement they had a right to do so, and that they had a right to rescind and did then rescind the contract of purchase, on account of a cough which, as they claimed, the horse had at the time of the purchase. The defendant forbade the plaintiffs to leave the horse and requested them to remove him, but they refused to do so, and left it hitched upon the defendant's premises, then and afterwards declaring that they would have nothing further to do with it, and the horse remained upon the defendant's premises until the attachment thereof by the defendant to be mentioned.

On the 16th of May, the defendant, by virtue of a legal writ of attachment in his favor against the present plaintiffs, attached the horse as their property, and upon proper proceedings had under the statute providing for the sale of live stock attached, the horse was sold under the attachment, and the avails of the sale were deposited with the clerk of the court,

in whose hands they now were subject to the order and dis. posal of whoever might be entitled to the same.

The writ of attachment was made returnable to the term of the Superior Court in Litchfield County held on the third Tuesday of September, 1871, and on the return day of the writ the present plaintiffs pleaded in abatement thereof for defective service, (the officer having left the copy intended for the defendants at the wrong place,) and the cause remained on the docket of the court, by regular continuances, until the January term, 1873, when the writ was abated and dismissed, with judgment for the present plaintiffs to recover their costs; which judgment has never been set aside. The present suit was not commenced until after the decision of the court dismissing the writ. The writ upon which the horse was attached, and the officer's return thereon, were both in regular form and sufficient on their face, and the defendant had no knowledge or suspicion at the time of the sale of the horse of any defect in the service of the writ.

The horse, at the time it was attached by the defendant as the property of the plaintiffs, was in the possession of the defendant, under the claim of the plaintiffs that they had rescinded their contract for its purchase, and had ceased to have any title to or interest in the horse, and that it belonged to the defendant.

The plaintiffs have never paid the defendant the purchase price of the horse, but have always refused, and still refuse, to pay the same, or any part thereof. The horse was of the value of $150.

The plaintiffs claimed, upon the facts found, that, as matter of law, they were the owners of the horse at the time of the attachment by the defendant, that it was not competent for the defendant to deny their title as he had treated the property as theirs, and that, if they made a mistake in law in regard to their right to return the horse, such return and the leaving of the horse upon the defendant's premises, did not divest them of their right of property in it. They further claimed that, inasmuch as the writ of attachment had, previous to the commencement of the present action, been abated and dis-

missed on the ground of defective service, the taking and sale of the horse constituted a trespass, and that the process afforded no justification to the defendant in the present action, and requested the court so to decide.

The defendant claimed that, by the facts proved, there never was a perfected sale of the horse to the plaintiffs; that the horse was never delivered to and retained by the plaintiffs, and nothing given to bind the bargain, and that there was no memorandum in writing of the agreement made and signed by the parties. He further claimed that the plaintiffs, by returning the horse into his possession in the manner and under the claim they did, and refusing to pay for the same, and never making any further claim to the horse, in law and in fact abandoned and lost the title to and possession of the horse, and could not recover in this action. He further claimed that, at all events, the process offered in evidence by the plaintiffs was a justification of the defendant in attaching and selling the horse, and asked the court so to decide.

The court overruled the claims of the plaintiffs and rendered judgment for the defendant to recover his costs. The plaintiffs thereupon moved for a new trial for error in the rulings of the court.

*H. B. Graves*, in support of the motion.

1. As a matter of law and fact the plaintiffs were the owners of the horse in question. They had contracted for it, and performance of the contract had been consummated by a delivery on the part of the defendant, and an acceptance by the plaintiffs. The delivery under such circumstances removed any objection to the plaintiffs' title growing out of the statute of frauds. *Calkins* v. *Lockwood*, 17 Conn., 154. Their mistake in supposing they had a right under the contract to return the horse did not divest them of their title. Further, the defendant was estopped from claiming that the title was not in the plaintiffs. He had attached it as their property and sold it as such. The finding fully establishes this point.

2. The taking and sale of the horse under a defective pro-

cess was a trespass, and a conversion of the property to the defendant's own use.     2 Addison on Torts, 720, 779, 780.

3.  The title being in the plaintiffs by construction of law, such title carried with it a possession sufficient to enable the plaintiffs to maintain trespass for its illegal conversion.  *Bird* v.  *Clark*, 3 Day, 272, 277; *Williams* v. *Lewis*, id., 498.

4.  The process under which the horse was attached afforded no justification to the defendant in taking and converting it.  The plaintiffs' action was brought for an illegal taking and conversion, under a process which the Superior Court had declared void and dismissed.  Such a process could not justify any act done under it.

*W. Cothren*, contra.

1.  There was never any legal and perfected sale of the horse.  A contract for its sale was begun, but was never completed in accordance with the rules of law.  The statute of frauds provides that "no agreement for the sale of any personal property, for fifty dollars or upward, shall be good, unless the buyer shall accept and actually receive part of the property sold, or give something to bind the bargain, or in part payment, or unless some memorandum in writing of such agreement shall be signed by the parties to be charged therewith or their agents."  Gen. Stat., 441, sec. 44.  In this case the horse is found to be of the value of $150, and not a single requirement of the statute was complied with.  The plaintiffs did not, then and there, accept and actually receive the horse. They gave nothing to bind the bargain, or in part payment therefor.  They did not make and sign any memorandum in writing of their agreement.  They departed, after the negotiation, leaving the defendant to deliver the horse some other day.  When the defendant delivered the horse at a subsequent time, they returned him in a day or two, under a claim of right, because he had a cough.  They did not accept the horse, and have never accepted or paid a farthing for it, either then, or to this day, and insist that they never will pay anything. There was then no sale, delivery, or acceptance of the horse in law or in fact.  *Calkins* v. *Lockwood*, 17 Conn., 173;

*Atwater* v. *Hough*, 29 id., 508, 513; *Lampson* v. *Landon*, 5 Day, 506, 509; 2 Steph. N. P., 1989. "The acceptance must be clear and unequivocal, not constructive. A delivery without an ultimate acceptance, and such as completely affirms the contract, is not sufficient to satisfy the words of the statute." 1 Swift's Dig., 264.

2. But the plaintiffs say that the defendant attached the horse after they had refused to accept him. This fact cannot be complained of by them. They had no title to the horse, and claimed none. The act of attaching the horse was utterly nugatory, so far as the plaintiffs were concerned. He might just as well have attached anything else which he owned.

3. The action of trespass is grounded upon an injury to the possession or the right to possession. In this case, as the plaintiffs had neither the possession nor the right to the possession, their action must fail, if there were no other question in the case.

4. Even on the theory that the plaintiffs owned the horse, and were entitled to the possession, they cannot sustain this action. The property was taken by attachment, on a legal writ. Pursuant to statute, following all the legal steps, the horse was sold, and the avails deposited with the clerk, to await the issue of the suit. The writ was regular on its face, the officer's return was in legal form, when the defendant applied for an order of sale. The writ was returnable in September, and it was more than two years afterwards that the writ abated for matter *dehors* the writ and officer's return. Suppose the defendant had failed to sustain his suit upon issue joined upon the merits of the case. Would any one claim that an action of trespass would lie for the sale of the horse pursuant to the statute? How are the plaintiffs any more entitled to their action of trespass because the case is terminated by a plea in abatement? The proceedings under the sale are correct, at all events, and the entire record was correct when these proceedings were had. The officer took the property by legal writ, and made a legal return. Could the defendant be rendered guilty of trespass because afterwards, without his knowledge, the officer failed to leave a

copy at the defendant's last usual place of abode, but left it at his place of business instead.  Clearly not.  *Jackson* v. *Hubbard*, 36 Conn., 10.

5.  The process in the attachment suit furnishes a perfect defense to this action.  The attachment was legal, and the proceeding under which the horse was sold was in all respects according to law.

PARK, C. J.  There was nothing in the contract of sale of the horse which gave the plaintiffs a right to return the animal to the defendant and rescind the contract.  They claimed the right so to do because they afterwards discovered that the horse had a cough, which they claimed that he had at the time the contract was made.  But however this may have been, no right of rescission existed in the plaintiffs unless there was a condition in the contract of sale to that effect. If the horse did not answer the terms of the contract, there being no fraud in the sale, the plaintiffs' remedy was on the contract for a breach thereof.  1 Swift Dig., 383.  ·

It is further claimed that the contract was within the statute of frauds, and therefore void, and that consequently the title to the horse never passed to the plaintiffs.

This claim is based upon the fact that the horse was not delivered at the time the contract was made, it being conceded by the plaintiffs that the case was not taken out of the statute by a compliance with any other of its provisions.  But the horse was afterwards delivered under the contract, and however inoperative the agreement may have been previous to such delivery, the tender and acceptance of the horse under the contract had the same effect as a delivery at the time the contract was made.  There is nothing in the finding tending to show that the acceptance was conditional; that the horse was received for the purpose of being examined in order to ascertain whether he answered the terms of the contract; but on the contrary the finding is, that the tender and acceptance were absolute; and this being so, the contract could not be rescinded except by an agreement of both the parties to that effect.  If the defendant had accepted the horse as his prop-

erty when the plaintiffs returned him, the contract would have been rescinded. But this was never done. When the plaintiffs returned the horse the defendant refused to receive him, and afterwards brought his suit for the purchase money, and sold the horse as the property of the plaintiffs. This being so, the horse continued to be the property of the plaintiffs, from the time he was delivered to them, notwithstanding their efforts to rescind the contract. The want of mutuality in the attempted rescission prevented a re-transfer of the property.

We come now to the main question in the case, which is, can the defendant justify the taking of the property by legal process which he instituted and attempted to serve? The process was good upon its face, but the claim is that it was never served upon the present plaintiffs, who were the defendants in it. The statute prescribes the mode, and the only mode, for the service of process. It is as follows in relation to writs of attachment. "In every case of attachment the officer serving the process shall leave with the person whose estate or body is attached, or at the place of his usual abode, if within this state, a true and attested copy of the process, and of the accompanying declaration or petition, and of his return thereon, describing any estate attached." The officer in this case undertook to serve the process by leaving a true and attested copy, as the statute prescribes, at the usual place of abode of the defendants therein; but the officer mistook the place of their abode, and left the copy at some other place, so that there was in fact no service of the process. But the officer made return on the process that he had left such copy at such usual place of abode of the defendants, and the question is, does this fact justify the taking of the property?

If the officer, after attaching the property, had made no further attempt to serve the process, no one would question the liability of the defendant. But does the fact that he attempted further service, which was wholly nugatory, because he did not do what the statute prescribes, make any difference? There is no such thing as a partial service of a process upon a defendant. Inasmuch as the mode of service is prescribed by the statute, whatever has been done in a given case,

like the present, must necessarily amount, either to a full and complete service of the process, or to no service at all.

But it is said that the officer's return that he had served the process in the mode prescribed by the statute, is primâ facie evidence that he had done so in fact, and that this was sufficient to require the defendants therein to appear in the court to which the process was made returnable and make answer to the proceeding. But the return of the officer was open to contradiction, and it was contradicted, and the court abated the process because it had no jurisdiction of the defendants in it for the want of legal service of the process upon them. The defendants could have waived the want of service, and would have waived it if they had seen fit to answer to the merits of the case, but this they did not do, and the court was left without jurisdiction of the process.

A majority of the court think it is clear that the proceeding on which the property in question was taken affords no justification to the defendant; and they therefore advise a new trial.

In this opinion PARDEE and LOOMIS, Js., concurred; CARPENTER and FOSTER, Js., dissented.