ANDREW RILEY ET AL. V. H. O. BANCROFT'S ESTATE.

FILED JUNE 3, 1897. No. 9182.

1. **Intoxicating Liquors:** LICENSE: SALES. A liquor dealer must have a license from the city or county in which his store is kept. With such license he may send out agents and take orders in any part of the state for goods to be sold and forwarded from the stock kept in such store; and he is not required to obtain a license from the authorities of each city or county in which contracts are made by such agent. *Gillen v. Riley*, 27 Neb., 158, followed.

2. **Statute of Frauds:** CONTRACTS. The object of the statute of frauds is to prevent frauds and perjuries, and while certain contracts are by the terms of the statute declared void, the uniform construction placed upon the statute by the courts renders such contracts not void but merely unenforceable for want of the evidence which the statute requires.

3. **Sales:** ACCEPTANCE: MEMORANDUM. In the case of a sale of goods where the price is $50 and upwards, where there is no note or memorandum in writing of the sale, and where no part of the price was paid at the time, a subsequent acceptance by the vendee of the goods does not constitute a new contract but merely renders enforceable the original verbal contract, and for that purpose relates back to the time and place thereof.

4. **Intoxicating Liquors:** PLACE OF CONTRACT OF SALE: PURCHASE PRICE. A, a licensed wholesale liquor dealer in O., sold liquors to B, a licensed dealer in S., in another county. The sales were in part by negotiations between the parties at the place of business of A; in part through a traveling salesman of A at the place of business of B. The goods were separated from the stock of A at O., were packed and shipped by railroad at O., consigned to B at S. B accepted the goods, paying the cartage from the store of A to the depot at O., and the freight from O. to S. The price was more than $50. There was no memorandum in writing and no part of the purchase money was paid at the time of the sale. *Held*, That the sale was at O., and legal; that the acceptance of the goods by B merely confirmed that sale, and that A could recover the price of the goods.

ERROR from the district court of Douglas county. Tried below before SCOTT, J.  *Reversed.*

*B. N. Robertson,* for plaintiffs in error.

*George G. Bowman, contra.*

IRVINE, C.

The plaintiffs, partners doing business as Riley Bros., filed a claim in the county court of Douglas county against the estate of H. O. Bancroft, deceased, for goods sold and delivered.  An appeal was taken to the district court, where the case was heard on an agreed statement of facts.  From the judgment there rendered, disallowing a large portion of the claim, the plaintiffs prosecute error to this court, submitting the case on agreed printed abstracts, under rule 2.

Riley Bros. were engaged in the wholesale liquor business in Omaha, where they had a license under the state law and had satisfied both state and federal requirements to legalize the traffic.  Bancroft and another were liquor dealers in Springfield, Sarpy county, under the name of E. E. Cragle.  They had procured the necessary license in Springfield.  Several sales are in controversy.  One of these was negotiated at the place of business of Riley Bros., in Omaha, by Cragle and Bancroft personally, who, after examining the goods, or samples thereof, left an order with Riley Bros.  The goods were not separated from the bulk of the stock while the purchasers were present, but thereafter the goods were packed and delivered by Riley Bros. at a railway station in Omaha, consigned to Cragle.  They were transported to Springfield and there accepted by Cragle and Bancroft, who paid the cartage from Riley Bros.' store to the depot and the freight from Omaha to Springfield.  The other sales were negotiated by a travelling salesman of Riley Bros., at the place of business of Cragle and Bancroft, in Springfield.

The order was sent to Omaha and was filled in the same manner, Cragle and Bancroft accepting the goods and paying the cartage and freight as before. There was no memorandum in writing of any of these sales, and the price was in each case more than $50. The sole question presented is the legality of the sales under the foregoing state of facts.

In *Gillen v. Riley*, 27 Neb., 158, it was held that a liquor dealer must have a license from the city or county in which his store is kept. With such license he may send out agents and take orders in any part of the state for goods to be sold and forwarded from the stock kept in such store, and he is not required to obtain a license from the authorities of each city or county in which contracts are made by such agent. This general principle is conceded to be correct, but it is urged that in order to render it applicable there must have been a technical sale at the place of business of the vendor, and the Kansas and Maine cases, which were avowedly followed in *Gillen v. Riley*, contain intimations that such is the law. It is not contended that a sale consummated in the manner disclosed as to either of the sales in this case would not be an Omaha sale under ordinary circumstances, but the argument is that no portion of the purchase money having at that time been paid, there being no note or memorandum in writing of the sales and the price of the goods being upwards of $50, the contract of sale was void when made, under the statute of frauds (Compiled Statutes, ch. 32, sec. 9); that it did not become valid, if at all, until the acceptance of the goods in Springfield by the vendees, and that this essential act having taken place in Springfield, that place became the *situs* of the sale, and there can be no recovery, because Riley Bros. had no license to do business there. In support of that contention we are cited to *Ex parte Parker*, 11 Neb., 309. That was a proceeding in *haleas corpus* whereby the validity of a sentence for obtaining goods under false pretenses was attacked for want of jurisdiction of the courts of Douglas

county, where the prosecution was had.  The goods were obtained in pursuance of a verbal contract of sale, the circumstances being much the same as in the case before us, the goods having been shipped from Douglas county, where the vendors did business, to Sarpy county, the place of business of the vendees.  The court held that the venue was improperly laid in Douglas county, because the delivery of the goods to the railway company in Omaha did not, under the circumstances, operate as a delivery and acceptance by the vendees.  It was not shown that the vendees themselves ever accepted the goods, and the court held that this fact was immaterial, because if they did, it was in Sarpy county, and would, therefore, require a prosecution there.  But this was not because the sale was thereby rendered a sale in Sarpy county, because the sale was only incidental to the offense.  The gist of the offense was the obtaining of the goods, and not only were the false pretenses made in Sarpy county, but the goods, if obtained at all, were there obtained.

We are also cited to a number of cases in other states, which it is unnecessary to here review at length.  Suffice it to say we do not regard any of them in point. Some of them are cases holding that a delivery to a carrier without an actual acceptance by the vendee himself. is insufficient to take the case out of the statute, and this on the ground that no act of the vendor alone can operate to toll the statute.  The vendee, to be charged, must act in one of the three ways provided; either by signing a memorandum, by making at the time payment or part payment, or by actually accepting the goods or part thereof.  These cases, while establishing the principle that there was no enforceable sale until the vendees accepted the goods in Springfield, do not establish that the sale was thereby made a sale at that point, thus changing the nature of the verbal contract.  Other cases are illustrated by *Webber v. Howe*, 36 Mich., 150.  In that case the vendor resided and did business in Ohio.  The vendee

resided in Michigan, where such sales were then unlawful. The vendor himself made the contract of sale in Michigan. The liquors were shipped from Ohio to Michigan, defendant paying the freight. The court merely held that the delivery to the carrier in Ohio did not take the case out of the statute, and that both the contract of sale and the acceptance of the goods having taken place in Michigan, it was immaterial whether the place of sale was fixed by one fact or the other, as it was in either case illegal.

We think that a recurrence to well established principles with regard to the statute of frauds is sufficient to solve the question before us. While the statute declares that sales not conforming to its requirements shall be void, it is a truism that they are not void, but voidable. Such is the construction that all courts have placed upon the statute. Indeed, the requirements of the statute are in a certain sense merely requirements of certain modes of proof and not requirements of inherent elements in the contract. The title of the original statute of frauds (29 Car. II. [Eng.], cap. 3) is "An act for prevention of frauds and perjuries," and the preamble recites that the enactment is "for prevention of many fraudulent purposes which are commonly endeavored to be upheld by perjury and subornation of perjury." Accordingly, it has always been held that the memorandum required need not be contemporaneous with the contract, but may be supplied through the means of letters and through documents not intended to embody a contract, although they be made subsequently, provided they are signed by the party to be charged and sufficiently disclose the terms of the contract. A notable instance of this is *Leather-Cloth Co. v. Hieronimus*, L.-R., 10 Q. B. [Eng.], 140, where it was held that a letter constituted a sufficient memorandum to validate a sale where it acknowledged in general terms the contract, but contained a refusal to pay because of the vendor's failure to follow shipping directions. So, also, a subsequent delivery and acceptance of

the goods is sufficient (*Marsh v. Hyde*, 3 Gray [Mass.], 331; *Rickey v. Ten Broeck*, 63 Mo., 563); and even where the statute does not so expressly provide, an acceptance of a portion of the goods answers the requirements. (*Garfield v. Paris*, 96 U. S., 557; *McNight v. Dunlop*, 1 Seld. [N. Y.], 537.)

From these considerations we think it follows that where a contract is unenforceable at the time it was made, through failure to comply with the statute, and where a subsequent act is performed which satisfies the statutory requirements, this act does not constitute a new contract, but merely supplies a particular kind of evidence necessary to establish and give effect to the contract, already in existence, but theretofore unenforceable. Speaking to this point, the supreme judicial court of Massachusetts says: "In carrying out its purpose the statute only affects the modes of proof as to all contracts within it. If a memorandum or proof of any of the alternative requirements peculiar to the seventeenth section be furnished, if acceptance and actual receipt of part be shown, then the oral contract, as proved by the other evidence, is established, with all the consequences which the common law attaches to it." (*Townsend v. Hargraves*, 118 Mass., 325.) So, too, in *Lawton v. Keil*, 61 Barb. [N. Y.], 558, it is said: "Parties are at liberty to ratify the agreement by performance; and the delivery of the property, or the payment of the money, under the contract, will operate to make valid a contract which otherwise could not be enforced. Such ratification is not a new contract. It only makes valid and confirms the parol agreement, which thereupon becomes an agreement valid and binding on both parties, to be enforced and carried out according to the original terms." (See, also, *Buckingham v. Osborne*, 44 Conn., 133.) The conclusion follows that the acceptance of the goods in Springfield by the vendees did not operate as a new contract; nor did it in any manner change the terms of that already entered into between the parties. It only operated to render enforceable that

which theretofore was nugatory, and for this purpose it related back to the time and place of the original transaction. We are constrained to hold, therefore, that the sales were made at the place of business of the vendors in Omaha, and that they were valid. The whole claim should have been allowed.

REVERSED AND REMANDED.