PETERSON & VOGT, A PARTNERSHIP, APPELLEES, V. CLAUDE J. LIVINGSTON, APPELLANT.

295 N. W. 2d 106

Filed July 22, 1980. No. 42904.

Arlan G. Wine, for appellant.

Richards & Richards, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Defendant below, Claude J. Livingston (hereinafter referred to as "Livingston"), appeals to this court from a judgment entered by the District Court for Hayes County, Nebraska, awarding Peterson & Vogt (hereinafter referred to as "Partnership") the sum of $12,140 in its action to recover amounts allegedly due it on two promissory notes executed by Livingston and payable to Peterson & Vogt, Inc. (hereinafter referred to as "Corporation"). We affirm.

By way of background, it appears that in 1946 a real estate brokerage partnership was formed by Chester A. Peterson (hereinafter referred to as "Chester") and Leonard A. Vogt (hereinafter referred to as "Vogt"). Chester secured a Nebraska real estate broker's license in 1939; and Vogt be-

came a licensed real estate broker in Nebraska in 1946, and in Colorado in 1964. The partnership license was kept current, and was in effect at all times involved in this litigation from the date of their issuance until the date of the trial. Harold C. Peterson (hereinafter referred to as "Harold"), Chester's son, joined the Partnership and became a partner therein in 1954. Harold was licensed as a real estate broker in Nebraska in 1955, and was also licensed in Colorado as a real estate broker in 1964. Vogt's and Harold's licenses were kept current and were in effect until the time of the trial. The Partnership secured a real estate broker's license in Nebraska in 1947, and was registered as a licensed broker in Colorado in 1964.

On December 31, 1972, the Partnership, which at that time consisted of only Harold and Vogt, for tax reasons changed the form of their business enterprise to a corporate entity, and became Peterson & Vogt, Inc. The Corporation was registered in Colorado as a licensed broker from January 1, 1973, until January 12, 1976, but apparently did not receive a broker's license in Nebraska until July 2, 1974, the license to the Partnership being in effect until that date. On January 1, 1976, the Corporation again became a partnership, and remained such until the time of trial.

On February 11, 1974, after the Partnership became incorporated, but prior to its receipt of a corporate broker's license in Nebraska, Livingston and Harold had conversations with regard to the listing and sale of certain land in Colorado which was owned by Livingston. Although there is a conflict in the evidence as to which party initiated the conversations, it is clear that the parties agreed that the sales commission for the sale of the land was to be $10,000 in the event that the land sold for $300 per acre. No written listing agreement was entered into by the parties, but the land was advertised by the Corpora-

tion and was subsequently sold for $300 per acre. All conversations with regard to the sale of the land were held in the state of Nebraska, as was also the preparation and execution of the deeds conveying the property. The closing of the transaction, however, occurred in Colorado on April 9, 1974.

For reasons not revealed in the record, the commission to the Corporation on the sale of the property was not deducted from the monies paid to Livingston at the closing. However, on that date, the Corporation requested Livingston to execute a promissory note to it for the amount of the commission on the transaction, but Livingston chose not to do so. Subsequently, however, after conversations between them, on August 20, 1974, Livingston executed two promissory notes to the Corporation for the amount of $5,000 each, the first note bearing a due date of October 20, 1974, and the second note bearing a due date of April 20, 1975. When, as stated above, the Corporation was again changed to a partnership entity, the notes, being assets of the Corporation, were transferred to the Partnership. These are the notes involved in this litigation.

The record reveals that plaintiff made numerous attempts to collect on the notes, but with little success. However, it appears that Livingston made a payment of $500 on each note on July 23, 1976, but made no further payment thereafter, although he acknowledged the existence of the indebtedness on numerous occasions thereafter. Following Livingston's failure to make a payment on March 4, 1978, the plaintiff brought this action on June 13, 1978, to recover on the notes. After a trial to the court sitting as the trier of facts, the court entered judgment for the plaintiff Partnership, as set out above.

Livingston has appealed that decision to this court, assigning several errors as grounds for reversal. He first contends that the trial court erred in holding that the execution of the notes and the acknowledg-

ment of the indebtedness in several letters avoided the requirements of the statute of frauds as to the necessity of written contracts with brokers for the sale of lands and also avoided the requirements of the Nebraska statutes with reference to the recovery of compensation by unlicensed brokers, and thus that the notes subsequently sued upon were legally collectible.

At this time, it will be helpful to review the pertinent Nebraska statutes. Neb. Rev. Stat. § 36-107 (Reissue 1978), relied upon by Livingston, provides, so far as applicable, as follows: "Every contract for the sale of lands between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent."

The history of the various Nebraska statutes requiring the licensing of real estate brokers as a condition to recovering compensation for their services, is more extended and complicated. It must be remembered that the transactions involved in this case occurred in 1974, although this action was not commenced until June 13, 1978, and the judgment rendered on January 10, 1979. On the date of the transaction in question, it is clear that the Corporation did not hold a broker's license in Nebraska, although both Harold and Vogt had individual licenses in effect both in Nebraska and Colorado, and the Corporation was duly licensed in Colorado.

The entire statutory law relating to the Real Estate Commission, and the licensing of brokers, was rewritten in 1973 in 1973 Neb. Laws, L.B. 68, and that statutory provisions applicable at the time of the transaction in question were as set out below. Neb. Rev. Stat. § 81-885.02 (Reissue 1976) was as follows:

> After September 2, 1973, it shall be unlawful for any person, directly or indirectly, to engage in or conduct, or to advertise or hold

himself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker, associate broker, or real estate salesman within this state without first obtaining a license as such broker, associate broker, or salesman, as provided in sections 81-885.01 to 81-885.47, unless he is exempted from obtaining a license under section 81-885.04.

Likewise, Neb. Rev. Stat. § 81-885.06 (Reissue 1976) provided:

No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provision of sections 81-885.01 to 81-885.47, to other than licensed brokers, licensed associate brokers, or licensed salesmen unless such person, partnership, or corporation was duly licensed under sections 81-885.01 to 81-885.47 as broker, associate broker, or salesmen prior to the time of offering to perform any such act or service or procuring any promise to contract for the payment of compensation for any such contemplated act or service.

The new statute enacted in 1973 also provided:

After September 2, 1973, no original broker's license shall be granted to a corporation or partnership unless the corporation or partnership designates a qualifying broker who is an officer of the corporation or a member of the partnership and who shall have more than a nominal interest in or be an active participant in the management of the corporation or partnership, and every member or officer of the corporation or partnership, who actively participates in the real estate

brokerage business of the corporation or partnership, shall obtain a license as a real estate broker and every employee, who acts as a salesman for such partnership or corporation, shall hold a license as an associate broker or a real estate salesman.

See Neb. Rev. Stat. § 81-885.16 (Reissue 1976).

It should be noted, however, that the statutes were again amended in 1978 by 1978 Neb. Laws, L.B. 361, effective July 22, 1978, and § 81-885.06 was amended to read as follows:

No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of sections 81-885.01 to 81-885.47, to other than licensed brokers, licensed associate brokers, or licensed salespersons. *A licensed broker may bring an action in the name of a partnership or corporation if the broker operates under either of such business organizations.*

See Neb. Rev. Stat. § 81-885.06 (Cum. Supp. 1978) (emphasis supplied). Likewise, former § 81-885.16, as set out above, was repealed. See Neb. Rev. Stat. § 81-885.16 (Cum. Supp. 1978).

It seems clear that the very actions of which appellant complains would be valid and proper at the present time; but under the statutes in effect at the time of the transactions involved herein, would have been sufficient to bar an action for the recovery of *commissions*. We emphasize, however, that the action involved in this case is not an action to recover commissions as such, but is an action to recover on promissory notes subsequently executed in a separate transaction, although indirectly arising from services rendered by the broker. While we recognize that other jurisdictions have held in similar situa-

tions that recovery cannot be had upon the subsequently executed notes because the consideration for such notes, being in violation of law, was illegal, we do not believe such is the law in Nebraska, by analogy to previous decisions of this court.

In *Mohr v. Rickgauer,* 82 Neb. 398, 117 N.W. 950 (1908), we held that while an oral promise to pay a commission to a broker for the sale of real estate is unenforceable because of the statute of frauds so long as it rests in parol, it constitutes a sufficient consideration to support a promissory note given in payment of such commission. In that case, we stated:

> The statute in question has been sustained, and it has been frequently held that, where the employment is oral, there can be no recovery upon the contract (*Allen v. Hall,* 64 Neb. 256; *Baker v. Gillan,* 68 Neb. 368; *Covey v. Henry,* 71 Neb. 118; *Danielson v. Goebel,* 71 Neb. 330); nor upon a *quantum meruit* for services performed (*Blair v. Austin,* 71 Neb. 401; *Rodenbrock v. Gress,* 74 Neb. 409; *Barney v. Lasbury,* 76 Neb. 701). Now, we have presented the question whether such services constitute a sufficient consideration for a written promise to pay. Like the statute of frauds, of which it is a virtual extension and enlargement, it was designed to exclude oral testimony as a means by which the rights of litigants could be determined in certain cases where experience has been shown that it was particularly liable to abuse. *Baker v. Gillan, supra.* To make a concrete application of the reason for the law, the legislature, premising that a liability might be wrongfully imposed upon a defendant by false testimony if it were permitted to be established by oral evidence, has provided that he shall not be charged except upon a written contract subscribed

by himself. When, however, the defendant, after receiving the benefit of services, executes a written promissory note in payment thereof, it would seem that the reason of the law was fulfilled. The contract is then established by his own signature.

The object of the statute is, as we have seen, to prevent frauds and perjuries; and, while certain contracts are by the terms thereof declared void, the uniform construction placed upon the statute by the courts renders it not void, but merely unenforceable. *Riley v. Bancroft's Estate,* 51 Neb. 864. It is within the principle laid down by Baron Parke in *Earle v. Oliver,* 2 Exch. (Eng.) *71, that "where the consideration was originally beneficial to the party promising, yet if he be protected from liability by some provision of the statute or common law, meant for his advantage, he may renounce the benefit of that law; and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by the law to perform it." This doctrine has been applied to cases where the consideration of a contract made by a *feme sole* was an unenforceable contract made by her while *covert*, as well as to cases where the consideration was an oral promise to answer for the debt of a third person unenforceable by reason of the statute of frauds. *Goulding v. Davidson,* 26 N.Y. 604; *Rogers v. Stevenson,* 16 Minn. 56; *Wills v. Ross,* 77 Ind. 1.

We are satisfied that the principle referred to applies to the case we are considering, and that the obligation of the defendant, while unenforceable so long as it remained in parol, was a sufficient consid-

eration for his written promise to pay the
same.

*Mohr* has been consistently followed and approved
by this court since that date. See, *Morrison v. Gos-
nell,* 84 Neb. 275, 121 N.W. 236 (1909); *Pierce v. Do-
mon,* 98 Neb. 120, 152 N.W. 299 (1915); *Ricketts v.
Geil,* 137 Neb. 531, 290 N.W. 254 (1940); *Svoboda v.
De Wald,* 159 Neb. 594, 68 N.W.2d 178 (1955); *Midcon-
tinent Properties, Inc. v. Pflug,* 197 Neb. 429, 249
N.W.2d 476 (1977).

While it is true that *Mohr* involved the validity of a
note taken after a failure to comply with the statute
of frauds by having a written contract, we believe
the same reasoning applies by analogy to the stat-
utes relating to the necessity of a broker having a
license at the time of a sale of real estate. Such con-
tracts, in reality, are not void, but voidable. Both
statutes have as their dominant purpose the protec-
tion of the public. See, 1973 Floor Debates 1145
(Feb. 27, 1973) (Remarks of Senator Duis). *Svoboda
v. De Wald, supra.*

The trial judge reached the same conclusion, with
which we agree. In announcing his decision, he
stated as follows:

> I think probably the first thing I should say
> is that the services were performed and the
> sale made, and the seller in this case re-
> ceived a consideration for the sale. I think
> this explains the rulings of our Supreme
> Court under 36-107 when they permit a note
> to change what would otherwise be a void
> contract. That is as you recall under 36-107
> why it had to be in writing. But in the Moore
> [Mohr] case and in others quoted the Su-
> preme Court said that the notes took it out of
> the provisions of the statute. I think the
> reason for that, or at least one of them, was
> that basically the court or anybody else
> likes to see things paid for when they are

— when the work is performed.

. . . .

Well, it's as I say, under the law, as it appears, that's 36-107, which is the written portion because we have cases that say that the making of the notes is then a new matter and it can be collected. But there are no such rulings under 81-885.06 which I think Mr. Blackwell [defendant's attorney] believes to be the principal contention, and I agree with him that it is. Now, the reason that we don't have such good guidelines under 81-885.06 is that there have been no cases cited under the section. And so we have to go with the section itself and what we can derive from other cases, and cases involving other statutes.

Now, what we have under 81-885.06 is a gap in the broker's license for the corporation. And it was during this gap that some of the transactions occurred. This would have been on the Nebraska license, not on the Colorado license, and is the contention that is made by Mr. Blackwell, and it's true that a number of parts of the transaction took place in the State of Nebraska. But I can't help but apply the same principal in the [Mohr] case to 81-885.06. . . .

Therefore, I believe that the principles of the Moore [Mohr] Case also apply to 81-885.06, that is in the execution of the note and the acknowledgment of the debt, that the irregularities in the real estate commission is not all that important. The notes bear interest at 6 percent per annum from due date at 8 percent from maturity until paid. This I think is a valid and enforceable provision in the note. So, we will grant judgment for the plaintiff in this case. . . .

We conclude that Livingston's execution and delivery of the promissory notes in question amounted to an effective renouncement of the benefits of the statutes and that the trial court was correct in finding that the execution and delivery of the notes transformed the agreement to pay a real estate commission from an unenforceable obligation into a collectible debt.

What we have stated above, we believe, disposes of Livingston's second assignment of error to the effect that the trial court erred in finding that there was legal consideration given for the execution for the two promissory notes. As previously stated, an oral agreement to pay a real estate commission is sufficient consideration to support a promissory note. See *Mohr v. Rickgauer, supra,* and other cases supporting that rule, cited above.

Finding no merit to Livingston's assignments of error, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.